## PHILLIP L. RAIFORD *v.* MISSISSIPPI CENTRAL RAILROAD Co.

1. DEMURRER TO EVIDENCE.—Upon demurrer to evidence, the court stands instead of a jury, and may indulge all the inferences that a jury might indulge from the facts proved. [1 Johns. R., 29 ; 4 Cranch, 219.] And in such case, the question for a

revising court is very much like that presented when reconsidering the general verdict of a jury. [5 How., 555.]

2. ALLOWING STOCK TO RUN AT LARGE IN THE RANGE.—The owner of stock may allow them to go at large in uninclosed woods and fields, and the owner of the uninclosed soil has no remedy. But in such case the owner of the stock takes the risk of their loss or injury by unavoidable accident.

3. STOCK INJURED BY RAILROAD TRAINS.—The owner of stock permitting them to range in proximity to passing trains, and to wander on an uninclosed track,  incurs the risk of all unavoidable accidents.

4. PROPER CARE AND DUTY OF RAILROAD COMPANIES IN RESPECT TO STOCK IN THE RANGE.—But the fact of stock thus wandering on the track does not justify the agents or servants of the company in regarding them as there unlawfully, or relieve them from the observance of proper care and precaution for their safety. The company will be held responsible, under our statute, for the "mismanagement" or "neglect" of its agents or servants.

5. RAILROAD COMPANIES—RIGHTS OF, IN RESPECT TO STOCK IN RANGE.—Railroad companies have a right to run their trains at reasonable speed, day and night, being controlled by custom and the exigencies of travel and freights, and not in any degree by the liability of stock to wander on the track.

6. SAME.—In the case at bar the animals killed were galloping along the track at night, within thirty yards of the train, when first seen by the engineer; the night was foggy, there was a good head-light, the alarm whistle was blown, and the speed was reduced, from about fifteen miles to seven and a half miles, per hour. *Held:* That the company was not responsible for damages.

Error to the circuit court of Holmes county. CAMPBELL, J.

Plaintiff in error assigned the following errors: First, the court below erred in sustaining the demurrer of the defendant, to the evidence; Second, the court below erred in entertaining the demurrer to the evidence in the cause; Third, the court below erred in giving judgment in favor of the defendants.

*Turner, Groves & Turner,* for plaintiffs in error.

To run a train at such a rate as to overtake and kill a horse on the track, that is running under a fright at his full speed, is such gross negligence as will subject the company to damages at the suit of the owner. It is shown by the testimony that the horses were seen some distance running ahead of the locomotive before they were overtaken and killed; and the road at that point is straight for several miles. The engineer says he saw the horses, blew the alarm whistle, and the horses, alarmed, started down the track from the locomotive at full speed; that he could see them and attempted to check

the speed of the locomotive, but did not use all the appliances at his command, and thus overtook them just as they went to leave the track—ran over and killed them. It is further proved that the horses were within the bounds of the usual range of plaintiff's stock. The train was a small freight train; the time, the early part of the night. The plaintiff's right to range his stock in their usual range was older than the defendant's right of way, and equally as well defined. . If the defendants had killed the stock before seeing it, then they might, under some circumstances, have been excused. But after seeing the danger, and then to kill the stock when it could have been prevented by reasonable and timely exertion, shows such an indifference to, and carelessness of, the rights of the plaintiff as should be severely punished.

We take the true rule to be this, that where stock have been thus killed, the plaintiff is entitled to recover the value of the stock killed without proving negligence or malice upon the part of the defendant. But to entitle the plaintiff to recover exemplary or vindictive damages in addition to the actual value, it will be necessary to prove either neglect or malice. The court below did not adopt this doctrine, but held that to entitle the plaintiff to recover, it devolved on them to prove gross negligence or malice in the defendant. The evidence establishes very clearly these facts: that the stock was the property of the plaintiff; that it was worth $350; that it was killed by defendant's locomotive, and the court laid down these facts as fully proved on the trial. And the defendants admitted all the testimony in its fullest extent by their demurrer. Yet the court decided, that to entitle the plaintiff to recover there must be proof of gross negligence or malice upon the part of the defendant.

A demurrer to evidence removes the cause from the consideration of the jury to the court, who must decide the question of law and fact. Hall v. Browder, 4 Howard Miss. R., 224. "On demurrer to evidence the court must construe the testimony, and will draw every inference which a

jury might reasonably draw." Chewning v. Gatewood, 5 Howard R., 552. Blackstone says: "But the demurrers to evidence are at present not so much in use as formerly, since the more frequent extension of the discretionary powers of the court in granting a new trial." 3 Bl. Com., 372.

Under this view of the case, we do not think that such a practice deserves to meet with favor in our courts. It introduces a mere technical maneuver whereby it deprives one of the co-ordinate branches of the court, to-wit: the jury, of all its lawful powers, and depriving the party litigant of one of his most sacred rights, that of trial by jury. Declaration of Rights, sec. 28. But whether the demurrer was properly taken or not, we contend that under all the facts and circumstances of this particular case, the ruling of the court in sustaining the demurrer is error.

We are free to admit that the rulings of the high court of errors and appeals defining the liabilities of railroad companies for damages have not been very uniform, and we feel at a loss to determine from them what the true rule is. We, however, repeat the rule to be this: The plaintiff is entitled to recover the actual value of the stock killed, or damage done, and would be entitled, in addition, to recover vindictive or exemplary damages upon proof of gross negligence or malice. In support of the first proposition, see 2 Greenl. on Ev., p. 250, § 253, 5th edition. In support of the second proposition, see Sedgwick on Damages, p. 39. Upon both propositions, see also 2 Kent Com., 15, note *a*, as to damages.

*E. C. Walthall*, for the defendant in error.

The demurrer to evidence admits every fact that may *fairly* be inferred from it, but none other. "The court will presume in favor of the party offering the evidence, any and every fact which the jury might have inferred from the testimony in question. But those conclusions must be such as would result from a just and reasonable construction, and *not from arbitrary inferences.*" 3 Tuck. Com., p. 297; Chewning v. Gatewood, 5 How., 555. If the plaintiff's dam-

age was sustained " in consequence of the neglect or misman-
agement of any of their (the railroad company's) agents,
engineers, or clerks," or by reason of " the mismanagement
of their engines," he can recover. Art. 43, p. 299, Rev.
Code. But not otherwise, in a case like this.

It seems now settled in this state, in accordance with the
current of authority in those states where there is no obliga-
tion imposed by law on either the stock-owner or the com-
pany, to fence the track, that no recovery can be had for
injuries like those named in the declaration, unless they
were committed through some default of the company. 31
Miss., 156; 40 ib., 45. In the case last cited, a verdict
against the present defendant for a mule killed by a train,
was set aside in this court because, among other reasons,
there was no proof " offered of any negligence or miscon-
duct, or any want of reasonable care on the part of the
officers or agents in charge of the particular train." If our
own decisions just referred to, need support, see 1 Redf. on
R. R., 3d ed., p. 465, *et seq.*

The plaintiff's witness, the engineer in charge, proved that
the accident was unavoidable. He was an expert, and it
was proper to consider his testimony as coming from an
expert. 1 Redf., p. 476. The mere fact of killing an animal
by the company's train is not *prima facie* evidence of negli-
gence. Plaintiff must prove it. 1 Redf., 466–471, note, and
480, and cases cited in note 45.

In some states, by statute, the law imputes negligence to
the company when stock is killed, unless it be shown that
the accident was unavoidable. It is so in Maryland, Tennes-
see, and several other states. But it is not so here, and from
the enactment of statutes like those referred to, I take it
that in the states where enacted, the courts ruled, prior to
their adoption, that no presumption of negligence arose
against the company upon the proof of the injury, but that
want of care must be proven before a recovery could be had.

As the evidence in this case does not tend to prove any
default in the company, and as nothing of the kind can be

"fairly inferred," the court cannot but affirm the judgment of the court below. To do so, would certainly be to follow the action of the court in the case cited from 40 Miss., where a verdict was set aside, which was found upon stronger proof against the company than that admitted in this case of demurrer. See also, N. O. J. & G. N. R. R. Co. v. Enochs, not yet published.

*R. A. Anderson*, on the same side, cited 31 Miss., 193, and 40 Miss , 47.

SIMRALL, J.:

This suit was brought by Raiford, plaintiff in error, against the Mississippi Central Railroad Company, to recover damages for the killing of two mares, the property of Raiford, by the engine and train of the company. The facts are : The animals were killed near Goodman, at night; they were not seen by the engineer until the train was within thirty yards of them ; they were galloping along on the track, the alarm whistle was blown, and the speed of the train, which had been moving about 15 miles an hour, schedule time, was reduced to about 7½ miles per hour; the train could not be stopped in time to save the animals; the night was foggy; the locomotive had a good head light, the best on the road, etc. There were other facts not very material, however, proved. There was a demurrer by the railroad company to the evidence and judgment in favor of the demurrer.

The case is here by writ of error. The error assigned is : The court below erred in not rendering judgment for the plaintiff in error on the demurrer. The general rule is that on demurrer to the evidence, the court stands in the stead of the jury, and may indulge all the inferences from the facts, which a jury might fairly have drawn. 1 John. Rep., 29 ; 4 Cranch, 219. The question in the revising court, is very much like that presented when considering the effect of a general verdict of a jury. Chewning v. Gatewood, 5 How., 555. Sec. 8 of Rev. Code, p. 298, 299, provides rules for the government of railroad companies, running and management

of their trains, so as to insure (as far as practicable) safety to persons and property.   Article 53 :   " Every railroad company shall be liable for all damages which may be sustained by any person in consequence of the neglect or mismanagement of any of their agents, engineers, or clerks, or for the mismanagement of their engines."

Questions of the character involved in this record are of frequent occurrence in this and the other states.   The railroad companies have an exclusive right to the occupancy and use of their road for the purpose of the prosecution of their business.   They stand in this respect on the same footing of any other proprietor.   At the same time, they must so use their property and franchise as not, " because of neglect or mismanagement," to injure or destroy the property of another.   In the Vicksburg and Jackson Railroad Company v. Patton, 31 Miss. Rep., 190, it was held that the custom is well settled by long usage and universal acceptation, as well by statutory recognition, " that the owner is entitled to permit his cattle to go at large in the neighborhood range, and is not liable for damage done by them to the premises of a neighbor, *which are not inclosed by a lawful fence*."   Raiford, therefore, might well suffer these horses to run at large in the uninclosed roads and fields.   But in so doing he took the risk of their loss or injury by unavoidable accident.   If they intrude on the road of the company, which is left uninclosed, it has no remedy against Raiford and Ra·ford, by letting his horses and stock range in proximity to the railroad, incurred the hazard of their wandering on the road, and the extraordinary risk to which, thereby, they might be exposed.   The fact that the animals were on the road did not justify the agents and servants of the company in. regarding them there unlawfully and in violation of the rights of the company, and in any measure release the company's servants from the observance of proper care and precaution for their safety.   The company had the right to run their trains at a reasonable speed, day and night.   We are not prepared to say that the schedule time of running ought,

in any degree, to be controlled by the liability of stock to wander into the road, or that the company, in determining the rate of speed, should have had any special reference to this liability. The speed of the trains should rather be controlled by the custom of railroads and the exigencies of travel and freights.

In the case cited, the court say the company can justify the destruction of animals on their track, " only when in the necessary prosecution of their business, and when the act is unavoidable after the use of such care, skill and prudence as a discreet man would employ to prevent it." In the Mississippi Central Railroad v. Miller, 40 Miss. Rep., 48, the distinction is drawn between the responsibility of a railroad company toward persons and property transported over its road as a common carrier. With respect to these the company is committed to the " utmost care," and a failure to use it is negligence for which it is liable. But toward other persons and their property, with respect to whom the railroad company have not assumed the responsibility of common carriers, they are only bound, in running their trains, to the use of such reasonable care and prudence as a prudent man would, in similar circumstances, use to prevent injury or destruction." N. O. J. & G. N. R. R. Co. v. Enochs, Opinion Book 1.

In Williams v. Michigan Cen. R., 2 Mich. R., 259, the court say: " If the animals are wrongfully on the road, the company cannot be held liable for any accidental injury which may have occurred, unless the lawful right of running the train was exercised with a proper degree of care and precaution in an unreasonable and unlawful manner. At common law the proprietors of land are not bound to inclose as against each other, but each is bound to keep his cattle on his own premises. 2 Black. Comm., 209–211.

In Brainard v. Bush, 1 Cow., Rep. 78; Bush made maple sugar, in an uninclosed wood land, and left some syrup in an open shed, to which Brainard's cow, in the night time, came and drank, which caused her death. Savage, Chief Justice :

"Although Bush was guilty of negligence in leaving his syrup where cattle running at large might have access to it, yet the plaintiff having no right to permit his cattle to go there, has no cause of action."

In those states where the old common law prevails, it is the duty of the owner to keep his cattle on his own premises, and he becomes a wrong doer, if any of them escape or stray off on the lands of another.   According to the English rule, if the animal, when the injury occurred, may have been wrongfully on the railroad track, if the damage resulted from gross negligence or willful misconduct on the part of the company's agents, in running the train—such being the proximate cause of the injury—the company would be liable. Lafayette & Ind. R. R. Co., Shrine, 6 Ind. Rep. 145; Inman v. Galt, 7 B. Monroe, 538; 16 Conn. Rep., 420.

A party seeking damages under the 43d art., of Code (above cited), must show some " mismanagement " or " neglect " on the part of some of the servants of the company, and that the injury resulted therefrom.   The circuit judge, who tried the cause, had the benefit of hearing the witnesses, and therefore, had better advantages than this court has, to consider and estimate the value and weight of the testimony. He could deduce such inferences, and come to the same conclusion that the jury might, if the case had been submitted to them.   His decision was in accordance with the principles herein stated.   Let the judgment be affirmed.