## L. R. & F. S. RAILWAY CO. v. FINLEY.

I. TRESPASS: *Stock going upon unenclosed land of another.*
The doctrine of the common law, that if the owner permits his stock to run at large, and they enter upon the land of another, though unenclosed, he becomes a trespasser, is inapplicable to the condition and circumstances of our people, and has never been recognized in this State.

2. NEGLIGENCE: *Permitting stock to go at large near railroad.*
Although one may not be altogether free from negligence in permitting his stock to go at large in the immediate vicinity of a railroad, yet, in doing so, he assumes only the risk of an accident which might not be avoided by ordinary care and watchfulness of the agents and employees of the railroad company.

3. SAME: *Diligence required of railroad engineers to avoid injury to stock.*
It is the duty of an engineer of a railroad train to keep a constant and careful look-out for stock upon the track; and, although stock be wrongfully there, yet he must use ordinary care and diligence to discover it and avoid injury to it, or the company will be liable for the injury done to it.

4. SAME: *Presumed, from killing of stock on railroad track.*
The killing of stock upon a railroad track being shown, the presumption is that it was negligently done by the train; but the presumption may be repelled by proof.

5. PRACTICE IN CIRCUIT COURT: *Discretion in admitting testimony.*
The admission of further testimony after closing the instructions in a case, is within the sound discretion of the Circuit Court.

APPEAL from *Pope* Circuit Court.
Hon. R. C. BULLACH, Special Judge.

## STATEMENT.

Finley recovered judgment against the appellant, before a Justice of the Peace of Faulkner county, for seventy dollars damages, for killing a mule by the negligent running of its train. The appellant appealed to the Circuit Court.

Upon the trial there, the plaintiff testified that he lived about fifty yards from the Cadron platform, which was on defendant's road, and right opposite his house. He owned a horse and mule. About dark, on the evening of the eleventh of July, 1879, he put a bell on the horse, and turned it and the mule out, at the house. A train passed late that night. Witness was asleep, but the noise of the train waked him. It seemed from the noise to be running rapidly. Next morning he found the mule between a quarter

and half a mile from Cadron Station, in the direction the train had gone. It was standing on the track, on three legs; the right hind leg was crushed, and dangling by the skin. The skin was not broken much. It was not bleeding much. There was some blood, where it was standing, on the track. Some skin was knocked off the side of the mule. There was blood on the left-hand rail, and on the left-hand side, near the track, was a wallowed place, like the mule had been thrown down there, or had been lying there, and struggled to get up. Some blood there. He died two days afterwards. Was worth seventy-five dollars. There were some tracks of the mule on the railroad, running in the direction the train went. Saw these tracks for ten or twenty steps. The train passed at an unusual hour. Heard no whistle or bell as the train passed.

Manuel Finley, son of the plaintiff, corroborated his father as to the injury to the mule, and circumstances thereof.

S. O. Coombs testified that the mule's right hind-leg was crushed, and it had some flesh wounds. He saw it about a hundred yards from the railroad, and about a quarter of a mile from the station. It was worth seventy dollars. He appraised it.

G. W. Bush, for defendant: Was the engineer on the train. The engine and cars belonged to the Iron Mountain road, and had the officials of that road on board. He was in the defendant's employ, and was instructed to run carefully, especially at platforms, as the cars were wider than the Fort Smith Railroad cars, and might strike the platform. Never run over twenty miles an hour, and not over ten, in half mile of a platform. Saw no stock on the track. When he came to Cadron platform, slowed-up, and came nearly to a stop. Saw some horses and mules there on each side of the track, just beyond the platform. They

did not get on the track, as he saw.   The train had a splendid head-light, and he kept a good look-out.   Owing to its being a train of another company, and the passengers on it, he run with unusual care.

On cross-examination, he stated that the mule might have been struck by the bumper, or dead-wood, after the engine passed it, as the cars extended about two feet over the rails on each side.   The pumper might have struck it and knocked it down.   He was certain the engine did not strike it, for when he got to the next station he examined to see if there was any blood or hair on the cow-catcher, or pilot, or engine, and found none.   He made this examination because he thought he might have touched them, though he did not think he had, and knew, by that fact, that he had not. They were not near enough to be struck by the bumper after the engine passed them.   When stock is run over there is great danger of ditching the engine, and destroying it and the train, and killing the engineer.

Among others, the defendant asked the following instruction :

1.   " That the rail bed and track of the defendant is private property, and any person and stock upon said track, at any place, except at public highways, streets, or crossings, is a trespasser, and the defendant is not bound to keep an extraordinary look-out for stock, except at such places, and the defendant is only bound to proper care and diligence, after the mule was discovered to be in danger, and not before."

The court refused this instruction, as asked, but added to it the words, " Provided, the defendant used ordinary care and diligence in keeping such look-out ;" and then gave it, as modified.

The court then read to the jury the 1st, 4th and 8th sections of the Act of February, 3, 1875, entitled " An Act

requiring railroad companies to pay damages to persons and property and for other purposes," and at the same time instructed them as follows :

· " By the common law rule, a party, to recover, had not only to show that the injury was done, but the burden of proof was on him to show that there was negligence in the defendant in committing the injury complained of. This rule is so far changed by this Statute, that if you find the mule was killed on the road, the burden is on the defendant company to show that its agents were, at the time, exercising ordinary care and diligence to guard against such an injury ; and where all the evidence is before you, it is for you to say whether that was done.    The question for the jury to settle is this :    Was the injury in this case such as would not have occurred if the defendant company and her agents had exercised, under all the circumstances, ordinary care and diligence to guard against such injury?    If you should so find, you should render your verdict for plaintiff, and give him the amount of damage he has suffered by reason of the injury to his property.    If, on the other hand, you believe the company, through her agents, was exercising such care and diligence as might reasonably be expected of them, under all circumstances—such care as a man of ordinary good business habits would, under all the circumstances, be likely to exercise to protect his own property—then you should find for defendant.    Ordinary care and diligence is that care which a man of ordinary good business habits would be likely to exercise, under the particular circumstances, to protect his own property.    The court cannot lay down any general rule to cover each particular case.    It is for the jury to consider all the circumstances, and say whether, in this case, proper care and caution has been used.    If not, the company will be responsible."

L. R. & F. S. Railway Co. v. Finley.

After the instructions were closed, the court, against the objections of the defendant, permitted the plaintiff to prove that the injury occurred in Faulkner county.

The jury found for the plaintiff the sum of seventy dollars.

The defendant moved for a new trial, which was overruled, and it filed its bill of exceptions and appealed.

*Clark & Williams*, for appellant:

There was no evidence against the defendant, and the court should have directed the jury to find for the defendant, or should have set aside the verdict, and should have given no instructions inconsistent with this view. Where there is no evidence of negligence, there is no case for the jury, although the injury and damage be completely proved. There is no evidence that the animal was injured on the track or by the train. The case of *L. R. & F. S. Rw'y. Co.* v. *Payne*, 33 *Ark.*, 816, cannot be construed to mean that when a railroad runs through any county the Statute requires that it shall be presumed to be the cause of the killing or injury which may happen to any or all stock running at large in the county. Such a ruling is a palpable fraud upon the bill of rights, and no Legislature can authorize a violation of the bill of rights, any more by juries than by the courts. *Sedgwick Stat. and Const., Law*, ch. 5, pp. 142, 147, 155 *and note* 168, *et seq.*, 174 and cases cited.

Appellee was guilty of contributory negligence, in turning his mule loose in the close vicinity of the track, and this will bar recovery. 1 *Thomp. on Neg., pp.* 497, 498, 499, 500, 501; *Chicago R. Co.* v. *Patchen*, 16 *Ills.*, 198; *Illinois R. Co.* v. *Phelps*, 29 *Ills.*, 447; *Chicago R. Co.* v. *Cauffman*, 28 *Ill.*, 513; *N. O. R. Co.* v. *Field*, 46 *Miss.*, 573; *Cranston*, v. *Cin. R. Co.*, 1 *Handy*, 193; *Marsh* v. *N. Y. R. Co.*, 14 *Barb.*, 364; *Halloran* v. *N. Y. R. Co.*, 2

*E. D. Smith* (*N. Y.*), 257; *Louisville R. Co.* v. *Ballard*, 2 *Metc.* (*Ky.*), 257; *Mich. R. Co.* v. *Fisher*, 27 *Ind.*, 97; *Clark* v. *Syracuse R. Co.*, 11 *Barb.*, 112; *Bennett* v. *Chicago R. Co.*, 19 *Wis.*, 145; *Treewhacker* v. *Cleveland R. Co.*, 3 *Ohio St.*, 185.

There was no case here to go to a jury, for the evidence negatived all negligence, and it was error to submit the case to the jury. *Macon, etc., R. Co.,* v. *Vaughan*, 48 *Ga.*, ·464; *Morgan* v. *Duffie*, 69 *Mo.*, 469; *Parks* v. *Ross*, 11 *How.*, 362; *Van Schnick* v. *Hudson, R. Co.*, 43 *N. Y.*, 427; *Hickman* v. *Jones*, 9 *Wall.*, 197.

If the mule was on the track it was a trespasser, and the company would be liable only for negligence in not avoiding the injury *after the mule was seen on the track.*

· *Compton, Battle & Compton*, for appellee.

1. TRESPASS: Stock going upon uninclosed land of another is not. HARRISON, J. The doctrine of the Common Law that the owner of domestic animals is bound to keep them within his own enclosure, or on his own land, and that if he permits them to run at large and they go upon the land of another, though uninclosed, he becomes a trespasser, has never been recognized in this State. Such a rule is inapplicable to the condition and circumstances of our people. It would be, or would have been in the early settlement of the country, where there was so much land lying waste and uninclosed, most oppressive and unwise, and from the first settlement of the State to the present time, all kinds of stock have been allowed to go at large on uninclosed lands.

And it is shown, not only by the common understanding and custom of the people, but by the Statutes in relation to inclosures, estrays, and the marking and branding of stock, that the doctrine or rule was never considered as having any force or existence in Arkansas.

A very prudent person might not, perhaps, allow his stock to go at large in the immediate vicinity of a railroad, and one who does so may not be altogether free from negligence, yet he assumes only the risk of an accident which might not be avoided by ordinary care and watchfulness of the agents or employes of the railroad company. *Kerwhacker,* v. *The Cleveland, Columbus and Cincinnati R. R. Co.,* 3 *Ohio St.,* 172 ; *Trow* v. *The Vermont Cen. R. R. Co.,* 24 *Verm.,* 487 ; *The Chicago & Alton R. R. Co.* v. *Gretzner,* 46 *Ill.,* 74 ; *Raiford* v. *Miss. Cen. R. R. Co.,* 43 *Miss.,* 233 ; *Davies* v. *Mann,* 10 *Mee. & Wel.,* 545.

In *Davis* v. *Mann, supra.,* the plaintiff fettered the forefeet of his ass and turned him into the public highway, and whilst it was grazing on the off-side of the road (which was about eight yards wide), and unable to get out of the way, the defendant's wagon, with a team of three horses, coming down a slight descent, at what the witness termed a smartish pace, the driver being some little distance behind the horses, ran against the ass and killed it.

The judge (Erskine) who tried the case at the assizes, told the jury that though the act of the plaintiff in leaving the ass on the highway, so fettered as to prevent his getting out of the way of carriages traveling along it, might be illegal, still, if the proximate cause of the injury was attributable to the want of proper conduct on the part of the driver of the wagon, the action was maintainable against the defendant ; and he directed them, if they thought the accident might have been avoided by the exercise of ordinary care on the part of the driver, to find for the plaintiff. The jury having found a verdict for the plaintiff, on a motion for a new trial, PARKE, B., said :

"The judge simply told the jury that the mere fact of negligence on the part of the plaintiff in leaving his donkey on the public highway was no answer to the action, unless

*Margin note:* 2. NEGLIGENCE: Permitting stock to go at large near railroad.

the donkey's being there was the immediate cause of the injury; and that if they were of opinion that it was caused by the fault of the defendant's servant, in driving too fast, or, which is the same thing, at a smartish pace, the mere fact of putting the ass upon the road would not bar the plaintiff of his action. All that is perfectly correct, for although the ass may have been wrongfully there, still the defendant was bound to go along the road at such a pace as would be likely to prevent mischief. Were this not so, a man might justify the driving over goods left on a public highway, or even over a man lying asleep there; or the purposely running against a carriage going on the wrong side of the road."

And LORD ABINGER, C. B., said:

"The defendant has not denied that the ass was lawfully in the highway; and, therefore, we must assume it to have been lawfully there; but even were it otherwise, it would have made no difference, for, as the defendant might, by proper care, have avoided injuring the animal, and did not, he is liable for the consequences of his negligence, though the animal may have been improperly there."

3. Dili-gence re-quired of engineer to avoid injury to stock. Although the mule was wrongfully on the defendant's track when he received the injury of which he died, and was not seen by the engineer, yet, if by the exercise of ordinary care and watchfulness, he might have seen him in time to have averted the danger, the defendant was liable for the injury that resulted from the accident. It was certainly the duty of the engineer to keep a constant and careful look-out and watch for stock which might be upon the track.

The defendant's first instruction, as it was asked by him, was, therefore, not correct, but as modified by the court, was properly given to the jury.

The construction by the court of the Act of February 3, 1875, for the recovery of damages for injuries by railroads, in the first instruction given on its own motion, was in accordance with the ruling in the case of *L. R. & F. S. R'y.* v. *Payne,* 33 *Ark.,* 816.

We held in that case that the killing of the animal on the track being shown or admitted, the presumption is that it was done by the train, and resulted from want of due care, but that the presumption may be repelled by proof; and we see no reason to doubt the correctness of the ruling then made. There was, therefore, no error in that instruction, and the others complained of being in harmony with the view we have above expressed, they were all properly given.

The objection that the plaintiff was permitted, after the evidence was closed, and the court had instructed the jury, to call a witness and prove that the mule was killed in Faulkner county, has not been insisted on here by appellant's counsel. It was a matter within the sound discretion of the court, and there was no abuse of its discretion in allowing it to be done. *Turner* v. *Tapscott,* 30 *Ark.,* 312; *Lovells* v. *The State,* 32 *Ark.,* 585.

As to the sufficiency of the evidence to warrant the verdict, we think there can be no question; of its weight and the credibility of the witnesses, it was the province of the jury to judge.

Finding no error, the judgment is affirmed.

*4. NEGLIGENCE:* Presumed from killing of stock on R. R. track

*5. PRACTICE IN CIRCUIT COURT:* Discretion in admitting testimony