### State *v.* Bain.

Opinion delivered December 20, 1926.

1. Animals—trespassing on uninclosed land.—Though the common-law doctrine that an owner who permits his stock to run at large is a trespasser if they enter upon the uninclosed land of another is inapplicable to conditions in this State, the Legislature may enact such law and make it the statute law.

2. Statutes—implied repeal.—Where two acts relating to the same subject are necessarily repugnant to or in conflict with each other,

the later act must control, and, to the extent of such repugnancy or conflict, operates as a repeal of the prior act, whether so expressly declared or not.

3. ANIMALS—STOCK RUNNING AT LARGE.—Special Acts of 1921, p. 219, §§ 5, 6, prohibiting the running at large of stock in a certain district in Lonoke County, though not inclosed by a lawful fence, *held* to repeal inconsistent provisions in Crawford & Moses' Digest, §§ 4655-4692, rquiring a lawful fence before conviction can be had for allowing stock to run at large.

4. CONSTITUTIONAL LAW—POWER OF LEGISLATURE.—As the action of the Legislature within its province is supreme, its reasons for legislation cannot be inquired into by the courts.

5. ANIMALS—PERMITTING STOCK TO RUN AT LARGE.—If cattle run at large with the knowledge and consent of their owner, he is guilty of permitting them to run at large.

6. CRIMINAL LAW—REVERSAL—NEW TRIAL.—Where the court erred in directing the jury to find the defendant not guilty, since the punishment is a fine only, the judgment will be reversed and the cause remanded for a new trial.

Appeal from Lonoke Circuit Court; *George W. Clark,* Judge; reversed.

STATEMENT BY THE COURT.

Upon information filed by the deputy prosecuting attorney, D. Bain was arrested and convicted before a justice of the peace for unlawfully permitting his stock to run at large within a stock-law district in Lonoke County, Arkansas.

Bain appealed to the circuit court. In that court the evidence for the State shows that D. Bain lived about five miles from the boundaries of fencing district B-3, Lonoke County, Arkansas, and that he had lots of horses, cattle, sows and mules running in said fencing district during the year 1925. Frequently his stock was impounded for running at large in the district, and Bain paid damages. He would be notified to come and get his stock, and they would be back in thirty minutes. One witness, who lived about a mile within the limits of the fencing district, said that he had frequently turned back the cattle of the defendant from his place, and had several times notified Mr. Bain that his cattle were running at large within the fencing district. At one time he

turned back twenty-eight head of cattle which were destroying his corn.

The fence around the district had been cut at different places, and it was found to be impossible to keep the gates up. The fencing district was not surrounded by a legal fence at the time the defendant permitted his cattle to run within the limits of the district.

The circuit court directed a verdict for the defendant, and from the judgment of acquittal the State has duly prosecuted an appeal to this court.

*H. W. Applegate,* Attorney General, *John L. Carter,* Assistant, *W. J. Waggoner,* prosecuting attorney, and *Chas. A. Walls,* for appellant.

*W. A. Leach,* for appellee.

HART, J., (after stating the facts). This court has held that the doctrine of the common law, that, if the owner permits his stock to run at large and they enter upon the land of another, though uninclosed, he becomes a trespasser, is inapplicable to the condition and circumstances of our people, and has never been recognized in this State. *L. R. & F. S. Ry. Co.* v. *Finley,* 37 Ark. 562; and *St. Louis I. M. & S. R. Co.* v. *Newman,* 94 Ark. 458, 127 S. W. 735.

While this is true, it does not follow that the Legislature may not re-enact the common law, in whole or in part, or make that law the statute law of the State. As said by the Supreme Court of North Carolina in *State* v. *Mathis,* 149 N. C. 546, 63 S. E. 99: "If the condition in respect to the agricultural system of the people so changes as to make it conducive to their interest to require all stock to be 'fenced in,' and relieve the landowner of the of the duty to 'fence it out,' we can see no good reason why the Legislature may not, by appropriate legislation, do so, either in respect to the whole State or political divisions thereof."

Such is the effect of our own decisions. In *DeQueen* v. *Fenton,* 100 Ark. 504, 140 S. W. 716, 18 A. L. R. 63, it was held that one who resides outside a municipality is guilty of an infraction of an ordinance against permitting

his stock to run at large within the city limits, if the stock are driven by him within the municipal limits, or if they run at large therein with his knowledge. Again, in *Howell v. Daughet*, 148 Ark. 450, 230 S. W. 559, it was held that statutes authorizing the impounding and sale of stock found running at large in violation of law are valid as police regulations. This principle of law seems to have been recognized as sound by counsel for both parties in the case at bar.

The ruling of the circuit court in directing a verdict of acquittal was predicated upon the theory that there could be no conviction under the statute where there was no lawful fence around the fencing district. The fencing district was organized under the provisions of § § 4655-4692 of Crawford & Moses' Digest. Under the provisions of the statute, the district must be surrounded by a lawful fence before there can be a conviction for allowing stock to run at large within its limits. The Legislature of 1921 passed an act to provide for the regulation of certain fencing districts in Lonoke County, to provide for the enforcement thereof, and to define the powers and duties of the fencing board. Special Acts of 1921, p. 215.

Sections 5 and 6 of said special act read as follows:

"5. That in any criminal or civil proceeding for the violation of this act or the general fencing district act, it shall be no defense to any person residing in and owning live stock in that part of Lonoke County, south of the Chicago, Rock Island & Pacific Railroad, affected by § 1 of this act, that any fence has been destroyed, gate removed, or that any part of the said area or district is not inclosed by a lawful fence.

"6. It shall be unlawful for any person residing in that part of Lonoke County south of the Chicago, Rock Island & Pacific Railroad affected by § 1 of this act, to drive out of said area, for the purpose of grazing or pasturing, unless said live stock is grazed or pastured upon land owned by them, and likewise it shall be unlawful for any person residing on the outside of said territory to ride, or drive into, or to permit to run at large,

in the restricted area any of the live stock enumerated in § 3 of this act, and all persons violating the provisions hereof shall be fined not less than $10 or more than $50.''

The special act just referred to does not, in express terms, repeal any of the provisions of the general act relating to the formation of fencing districts. When two legislative acts relating to the same subject are necessarily repugnant to or in conflict with each other, the later act must control, and, to the extent of such repugnancy or conflict, it operates as a repeal of the first act, whether it is so expressly declared or not in the later act. *DeQueen* v. *Fenton,* 100 Ark. 504, 140 S. W. 716. In the application of this rule of statutory construction, we are of the opinion that the special act of 1921 repealed the provisions of the prior general act in so far as the requirements of a lawful fence around District B-3 in Lonoke County, Arkansas, is concerned.

While it is true that § 5 above quoted seems to apply to those living within the district, it does allow the district to exist without a lawful fence. As we have already seen, this the Legislature had the power to do. It might change or modify the law with regard to building fences and permitting stock to run at large in cultivated lands in any way it deemed proper.

Section 6 makes it unlawful for any person residing on the outside of the fencing district to permit to run at large in the district any of the live stock enumerated in § 3 of the act. Section 6 specifically defines the ways the act may be violated, and it expressly prohibits people on the outside of the district from permitting their live stock to run at large within the district, and this indicates a purpose on the part of the Legislature to make such acts unlawful, regardless of the fact of whether the district was inclosed by a lawful fence or not. No useful purpose could have been served in passing the act if its provisions in this regard were only to apply to persons living within the limits of the fencing district.

It is insisted by counsel for the defendant that such a construction is inconsistent with the provisions of the

statute requiring that Fencing District B-4, which was not at that time inclosed by a lawful fence, to be inclosed. In answer to this, it need only be said that the Legislature had the power to enact such legislation as it deemed proper in the premises. Its action being supreme, its reason cannot be inquired into by the courts, and it is sufficient to say that the legislative will is a valid reason for its action.

If cattle run at large with the knowledge and consent of their owner, he is guilty of permitting them to run at large. *Beattie* v. *State,* 77 Ark. 247, 95 S. W. 163. Under this rule the evidence stated is legally sufficient to warrant a conviction.

The result of our views is that the court erred in directing the jury to find the defendant not guilty. Inasmuch as the punishment by the statute is a fine only, under our practice, the judgment will be reversed, and the cause remanded for a new trial.