## STATE OF ARKANSAS v. PORTER ET AL.

1. CRIMINAL LAW: *Keeping a bawdy house; indictment for.*

   The keeping of a common bawdy house is a misdemeanor, indictable and punishable by law in this State, and it is not necessary to allege in the indictment, or to prove, that it was kept for lucre and gain.

2. CRIMINAL PLEADING: *Immaterial allegations.*

   It is a rule of criminal pleading, that material allegations must be proved; and if an allegation need not be proved it is not material.

APPEAL from *Garland* Circuit Court.

Hon. J. M. SMITH, Circuit Judge.

*Moore*, Attorney-General, for appellant.

We have no Statute for the offense charged. At common law it was an indictable offense. *Chitty Cr. Law*, vol. 2, *p.* 39–40, *note; Whar. Am. Cr. Law, p.* 804; *Jennings* v. *Comw'lth*, 17 *Pick*, 26. The indictment is sufficient. *Whart. Prec. of Indict. etc., vol.* 2, *p.* 719 *et seq; Chitty Cr. Law, vol.* 2 *p.* 39.

### STATEMENT.

ENGLISH, C. J. Appellees were indicted in the Circuit Court of Garland county for keeping a common bawdy house. They filed a general demurrer to the indictment, which the court sustained and the State appealed. The indictment follows:

"The grand jury of Garland county, in the name and by authority of the State of Arkansas, accuse George Porter and Mrs. George Porter, of the crime of keeping a common bawdy house, committed as follows, to-wit: The said George Porter, on the first day of June, A. D. 1881, and on divers other days and times between that day and the day this indictment is filed in said court, in the city of Hot

State of Arkansas v. Porter et al.

Springs, in the county Garland, etc., did unlawfully keep and maintain a certain common bawdy house, and in said house, certain persons, as well men as women, of evil name and fame, and of dishonest conversation, then and there, and on the said other days and times, then unlawfully and wilfully did cause and procure to frequent and come together, and the said men and women in the said house then, and on the said other days and times, there to be and remain drinking, whoring and misbehaving themselves, unlawfully and wilfully did permit, to the great annoyance and damage, and common nuisance of all persons there inhabiting, being, residing and passing, and against the peace and dignity of the State of Arkansas."

OPINION.

His honor, the Circuit Judge, seems to have been in doubt about the sufficiency of the indictment, for he first overruled the demurrer to it, and ordered a jury to be called to try the accused, but afterwards discharged the jury, set aside the order overruling the demurrer, and caused judgment sustaining it to be entered. On what ground he held the indictment bad, we do not know, the demurrer being general, and appellees unrepresented by counsel here.

We have no special Statute making it a criminal offense to keep a common bawdy house, and providing for its punishment.

1. Keeping a bawdy house.    A bawdy house is defined to be "a house of ill-fame, kept for the resort and convenience of lewd people of both sexes." A bawdy house was of criminal cognizance at common law, upon the ground of public nuisance, endangering the peace and morals of the people. *State* v. *Evans*, 5 *Iredell, N. C.*, 606.

It is clearly agreed, that keeping a bawdy house is a common nuisance, as it endangers the public peace by draw-

State of Arkansas v. Porter et al.

ing together dissolute and debauched persons, and also has an apparent tendency to corrupt the manners of both sexes by such an open profession of lewdness. And it has been adjudged that this is an offense of which a *feme covert* may be guilty as well as if she were *sole*, and that she, together with her husband, may be convicted of it. 3 *Arch. Cr. Prac. and Plead. Waterman's notes*, 609–87, and authorities cited.

The common law, etc., was adopted by Statute in this State, and crimes and misdemeanors, the punishment of which has not been provided for by Statute, are punishable under the common law, etc., and the punishment is limited to fine and imprisonment. *Gantt's Dig.* secs. 772–3, etc.

The keeping of a common bawdy house is a misdemeanor, therefore, indictable and punishable by law in this State.

The indictment in this case follows the common law form used in England, except that it does not allege that the house was kept "*for filthy lucre and gain*," words used in the English precedent. 2 *Chitty Criminal Law*, 38. But we do not find in the notes that these were regarded as material.

Mr. Wharton says it is not necessary to allege that the house was kept for *lucre and gain*. *Whart. Am. Cr. Law*, vol. 3, (6th Ed.) sec. 2386.

Mr. Bishop says: "It was at one time deemed not certain, but now it is established, that, to constitute a bawdy house, there is no necessity for it to be kept for *lucre*. The offense consists in the public nuisance, and the form of corrupt motive is immaterial." 1 *Bishop Cr. Law*, (6th Ed.) sec. 1068.

And in his work on *Criminal Procedure*, vol. 2 sec. 108, he says the allegation that the house was kept for *lucre* is unnecessary.

In *The State* v. *Bailey* 1 *Foster* (*N. H.*) 343, the indict-

ment was for keeping a disorderly house, as a common law offense, and in the second count the words "*for his own gain and lucre*," were omitted.  The court held that the keeping of a disorderly house was indictable at common law as a nuisance, and that this part of the common law was in force in New Hampshire.  Justice BELL, moreover said:  "We regard the omission of the allegation, that the respondent kept the house *for gain or lucre* as not material.. The substance of the offense is the keeping such a house as is a common nuisance to the community, and whether this is done for the motive of gain, or for some other object, is unimportant.  In this respect we can see no difference between this case and the case of an indictment for keeping a brothel, a gaming house, or any other disorderly house. They are all indictable on the same principle, to-wit: that they are nuisances.  In *Jac. Law. Dict. titled Bawdy House*, is a precedent of an indictment for keeping such a house in which this averrment is omitted."

In Massachusetts keeping a house of ill-fame is punishable by Statute, and in *Commonwealth* v. *Ashley*, 2 *Gray*, 356, it was held that it was not necessary to allege that it was kept for gain, and in *Commonwealth* v. *Wood*, 97 *Mass.*, 225, it was decided that the trial court properly refused to instruct the jury that it was necessary to prove the defendant kept the house for lucre and gain.

The indictment in *State* v. *Homer*, 40 *Maine*, 438, omitted the words for lucre and gain, and it was held sufficient.

In *State* v. *Nixon*, 18 *Vermont*, 71, the indictment charged that the bawdy house was kept for lucre and gain, but the trial court charged the jury that this allegation need not necessarily be proved.  In the Supreme Court, WILLIAMS, C. J., said:  "The exceptions which were taken to the charge of the court, we think, were not well founded. The Statute does not make the keeping a house of ill-fame

an offense to depend on the motive of the person keeping it. It is immaterial whether it is kept for pecuniary profit and gain, or for other motives, equally bad and more debasing. It is most common that pecuniary profit and gain, in some way, is the governing motive. This motive may be inferred, as the evil intent is in other cases; but the prosecutor is not and cannot be bound to prove the actuating motive of the offender. The precedents of indictments for this offense, usually state, as in this case, that it was for pecuniary profit or gain. This, however, need not be proved. The charge of the court was correct in this particular."

2. PLEAD-ING: Material allegations.

Reversed and remanded for further proceedings.