## Ex parte FOOTE.

Opinion delivered November 30, 1901.

1. MUNICIPAL ORDINANCE—NUISANCE.—Under Sand. & H. Dig., §§ 5132, 5145, investing municipal corporations with power to prevent annoyances within their limits, to cause any nuisance to be abated, and to make and publish such ordinances as shall seem necessary to carry such power into effect, a town may pass an ordinance making it unlawful to stand a stallion or jackass within its limits and prohibiting the keeping of any jackass within its limits in the hearing of the populace. (Page 14.)

2. HABEAS CORPUS—FUNCTION OF WRIT.—On application for habeas corpus, if the person restrained of his liberty is in custody under process, nothing will be inquired into, by virtue of the writ, beyond the validity of the process upon its face and the jurisdiction of the court by which it was issued. (Page 17.)

Certiorari to Cross Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

Affirmed.

*J. L. Patterson,* for petitioner.

The constitutionality of an act under which a party has been convicted may be inquired into by habeas corpus. 3 Am. St. 901; 23 Am. St. 110; 31 Am. St. 94; 100 U. S. 371; 58 Am. St. 576; Church, Hab. Cor. § 83; 27 Ark. 467. Municipal ordinances must be confined to those objects over which power is expressly conferred by charter. 27 Ark. 467; 41 Ark. 526; 10 Wall. 497; 52 Ark. 23; 7 Am. St. 640. Residents in towns and cities must accept the inconveniences incident thereto, so long as they are not positive nuisances. 5 Am. St. 524; 64 Am. St. 516; 44 S. W. 353. The ordinance is void for uncertainty. 59 Am. St. 457; 61 *id.* 45; 45 Ark. 158.

*J. Emmett Smith* and *George W. Williams,* for Town of Wynne, in reply.

The council had the power to pass the ordinances. Sand. & H. Dig. §§ 5132, 5145, 5147. The only other question which can

arise in habeas corpus is the jurisdiction of the court.    6 Ia. 79.
The matter complained of was a legal nuisance.    1 Bish. Cr. Law,
§ 1142.    Mere error cannot be reviewed on habeas corpus.    4 Dill.
271; 93 U. S. 18; 148 U. S. 162, 166; 159 U. S. 70.

BATTLE, J.    W. R. Foote was accused and convicted in the
mayor's court of the town of Wynne, in this state, of a violation of
section 2 of the following ordinance:

"Be it ordained by the town council of the incorporated town
of Wynne, Arkansas:

"Sec. 1.    It shall be unlawful for any person to stand any stal-
lion or jackass, for the purpose of foaling mares, within the limits
of the incorporated town of Wynne.

"Sec. 2.    The keeping of any jackass within the limits of said
town, in the hearing distance of the populace of said town, is hereby
declared a nuisance, and is hereby made unlawful.

"Sec. 3.    Any person violating the provisions of sections 1
and 2 of this ordinance shall be deemed guilty of a misdemeanor,
and upon conviction thereof shall be fined in any sum not less
than ten nor more than twenty-five dollars, and each day that the
provisions of either sections 1 or 2 are violated shall constitute a
separate offense.

"Sec. 4.    All ordinances in conflict with this ordinance are
hereby repealed, and this ordinance shall be in force and take
effect from and after its passage and publication.    Approved May
9, 1901."

The court adjudged that he pay a fine of ten dollars and the
costs of the prosecution, and, failing to do so, the marshal of the
town took him into custody.    He thereupon applied to the Hon-
orable E. D. Robertson, chancellor of the Fifth chancery district
of Arkansas, for a writ of habeas corpus, alleging in his petition
that his detention and restraint by the marshal were unlawful and
wrong for the following reasons:

"(1)    That the passage of said sections 2 and 3 of the ordi-
nance aforesaid was *ultra vires*.

"(2)    That said sections 2 and 3 of the said ordinance are
null and void, and same are of no effect.

"(3)    That, said sections 2 and 3 of said ordinance being *ultra
vires*, invalid, null and void, the said mayor has no jurisdiction to
render the judgment aforesaid."

The marshal responded by admitting that he held the peti-

tioner in custody as alleged.   Upon a hearing, no evidence being adduced, the chancellor denied the prayer of the petition.   Was the ordinance void?

The statutes of this state invest municipal corporations with the "power to prevent injury or annoyance within the limits 'of the corporation from anything dangerous, offensive or unhealthy, and to cause any nuisance to be abated within the jurisdiction given to the board of health," that is to say, within the corporate limits and one mile beyond; and to make and publish such by-laws or ordinances as to them shall seem necessary to carry into effect this power, and as may be "necessary to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of such corporations and the inhabitants thereof."   Sand. & H. Dig., §§ 5132, 5145 and 5147.

These statutes endow municipal corporations with power to prevent and abate nuisances, but they do not authorize the declaration of anything to be a nuisance which is not so in fact.   *Town of Arkadelphia* v. *Clark,* 52 Ark. 23 ; *Yates* v. *Milwaukee,* 10 Wall. 497; 1 Dillon on Municipal Corporations (4th Ed.), §§ 374, 379.

"The authority to prevent and abate nuisances," says Judge Dillon, "is a sufficient foundation for ordinances to suppress and prohibit whatever is intrinsically and inevitably a nuisance.   The authority to *declare* what is a nuisance is somewhat broader; but neither this nor the general authority mentioned in the last preceding sentence will justify the declaring of acts, avocations, or structures not injurious to health or property to be nuisances. Much must necessarily be left to the discretion of the municipal authorities, and their acts will not be judicially interfered with unless they are manifestly unreasonable and oppressive, or unwarrantably invade private rights, or clearly transcend the powers granted to them; in which case the contemplated action may be prevented or the injuries caused redressed by appropriate suit or proceedings."   1 Dillon, Municipal Corporations (4th Ed.), § 379.   Again he says, "This authority (the power to prevent and abate nuisances) and its summary exercise may be constitutionally conferred on the incorporated place, and it authorizes its council to act against that which comes within the legal notion of a nuisance; but such power, conferred in general terms, cannot be taken to authorize the extra-judicial condemnation and destruction of that as a nuisance which in its nature, situation, or use, is not such."   *Id.* § 374.

In Wood on Nuisances it is said: "A nuisance, in the ordinary sense in which the word is used, is anything that produces an annoyance—anything that disturbs one or is offensive; but in legal phraseology it is applied to that class of wrongs that arise from the unreasonable, unwarrantable or unlawful use by a person of his own property, real or personal, or from his own improper, indecent or unlawful personal conduct working an obstruction of, or injury to, a right of another or of the public, and producing such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage." 1 Wood, Nuisances (3d Ed.), § 1.

The same author says: "Nuisances are either public or private. Public nuisances, strictly, are such as result from the violation of public rights, and producing no special injury to one more than another of the people, may be said to have a common effect, and to produce a common damage. Of this class are those intangible injuries that result from the immoral, indecent and unlawful acts of parties that become nuisances by reason of their deleterious influences upon the morals or well-being of society." Id. § 14.

There are two kinds of public nuisances. One is that class of aggravated wrongs or injuries which affect the "morality of mankind, and are in derogation of public morals and decency," and, being malum in se, are nuisances irrespective of their location and results. The other is that class of acts, exercise of occupations or trades, and use of property which become nuisances by reason of their location or surroundings. To constitute a nuisance in the latter class, the act or thing complained of must be in a public place, or so extensive in its consequences as to have a common effect upon many, as distinguished from a few. Where it is in a city or town, where many are congregated and have a right to be, and produces material annoyance, inconvenience, discomfort, or injury to the residents in the vicinity, it is a public nuisance of the latter class.

It is said in Wood on Nuisances: "Many kinds of business that would be regarded as a nuisance upon a street that is densely populated and much traveled, or that is occupied for business purposes of such a character as naturally make it what is called a thoroughfare, would not be such upon a less populous street, or one that is not so much used by the public. * * * Thus, a blacksmith shop would not for a moment be tolerated upon a principal street of a city in the vicinity of costly buildings and fashionable

business places, except it were kept up and maintained in a way so as to produce no possible annoyance or injury; but, from the needfulness of the business, it is tolerated upon streets in less important parts of the city, and the smoke and cinders arising therefrom, as well as the noisy reverberations from the heavy strokes of the sledgehammers on its numerous anvils in the prosecution of the business, is permitted, even without the aid of special ordinances." Sec. 21.

It is now well settled that "loud, disagreeable noise alone, unaccompanied with smoke, noxious vapors or noisome smells, may create a nuisance, and be the subject of an action at law for damages, in equity for an injunction, or of an indictment as a public offense." *Id.* § 611. "Any indecent exposure of one's person in a public place, in the presence of several persons, is a public nuisance, * * * because it shocks the moral sensibilities, outrages decency, and is offensive to those feelings of chastity that people of ordinary respectability entertain." *Id.* § 57. So, for the same reason, the exhibition in public of obscene pictures, prints, books or devices are common nuisances. *Id.* §§ 65, 68.

In *Nolin* v. *Mayor and Aldermen of Franklin,* 4 Yerg. 163, the act incorporating the town of Franklin authorized the city council to enact and pass laws to prevent and remove nuisances. A law was passed by the council inflicting a penalty of five dollars on any person who exhibited a stud horse in the town. The court said: "Was this a nuisance within the meaning of the act of incorporation? Keeping hogs in a market town has been so holden (Salk. 460); as are ale houses, gaming houses, brothels, booths and stages for rope dancers, mountebanks and the like. 1 Hawk. P. C. ch. 75, § 6. The exhibition of these in the streets would be clearly a nuisance; and we think as certainly showing and keeping a stud horse in the town is. The corporation law was warranted by the charter."

As a rule, a jack is kept for one purpose only, and that is, the propagation of his own species and mules. He has a loud, discordant bray, and, as counsel say, frequently "makes himself heard, regardless of hearers, occasions or solemnities." He is not a desirable neighbor. The purpose for which he is kept, his frequent and discordant brays, and the association connected with him bring the keeping of him in a populous city or town "within the legal notion of a nuisance." So far as the facts appear to us, section 2 of the ordinance in question is valid.

In this case we cannot inquire into the regularity of the proceedings of the mayor's court. The writ of habeas corpus cannot be legally converted into a writ of error. "The great object of the writ is the liberation of those who may be imprisoned without sufficient cause, and to deliver them from unlawful custody. It is not the function of this writ to inquire into or correct errors. But its object is to require the person who answers it to show upon what authority he detains the prisoner. If the person restrained of his liberty is in custody under process, nothing will be inquired into, by virtue of the writ, beyond the validity of the process upon its face, and the jurisdiction of the court by which it was issued." *State* v. *Neel,* 48 Ark. 289.

Judgment affirmed.