Fort Smith *v.* Norris.

Opinion delivered November 19, 1928.

*Daily & Woods* and *Pryor, Miles & Pryor,* for appellant.

*Webb Covington,* for appellee.

Mehaffy, J. The appellee, Tom B. Norris, brought suit in the Sebastian Chancery Court, Fort Smith District, against the city of Fort Smith and its officials, to enjoin them from interfering with his erecting a filling station on a triangular tract of ground in the city of Fort Smith.

Appellee alleged that he had secured a permit from the city to erect a filling station, and that the city had subsequently revoked said permit, without authority, and the city and its officials were trying to carry into effect this illegal cancellation by threats of arrest and interference with the building of said station. The appellee asked that the city and its officials be enjoined from interfering with plaintiff in the erection of said filling station.

Appellee also alleged that he had leased the land where he was building the filling station from the owner, and that he did not agree and did not take the lease until he procured from the city and its officials a permit to construct the filling station. That he complied with the law in applying for the permit, and it was issued to him, and he thereupon entered into a lease contract for a period of five years, at a rental value of $50 per month, and bound himself for the payment of the rental of $3,000; that, after he had entered into the lease contract and begun work on the land, the city canceled the permit, without authority.

The city and its officials denied all the material allegations in the complaint, and alleged that Norris had never applied to the city for a permit on the property described, and had never published legal notice that he intended to apply for such permit.

On the same day that appellee filed suit, E. F. Creekmore, Sophronia Alexander and others filed suit in the same court against appellee, Tom B. Norris, in which they alleged that he was about to erect a filling station, as described in his complaint, and that the ground where he was about to erect the filling station was a distinctive residential neighborhood, and that the erection of a filling station thereon would constitute a nuisance. They asked that Norris and his associates be enjoined from erecting the station.

Appellee, Norris, filed answer to the complaint of Creekmore and others, denying the allegations in their complaint. The two cases were consolidated and tried together, and the chancellor entered a decree enjoining the city and its officials from interfering with the building of said filling station, and dismissed the complaint of Creekmore and others for want of equity. The city and its officials and the plaintiffs in the other case have appealed to this court.

Norris, the appellee, introduced a lease, dated the 4th day of October, 1927, from A. T. Couch to Tom Norris, describing the property on which it was intended to erect

the filling station. It was for a term of five years, beginning October 10, 1927, and having a rental value of $50 per month, payable in advance. Appellee then introduced in evidence the following building permit:

"Fort Smith, Ark., October 5, 1927. Tom B. Norris is hereby granted permission to erect a frame filling station building 16'x9', with a shed 16'x21', as per code requirements. Part of southeast quarter of southwest quarter, section 15-8-32, on lot................, block................, ................ Addition to the city of Fort Smith, to cost about $650, same to be used as a filling station. Said application is in accordance with the requirements of ordinance No. 1338 of the ordinances of Fort Smith, Arkansas.

"Cost of permit........................................................$1.00
"Inspection fee .......................................................... 1.50
                                                                        ————
   "Total ................................................................$2.50

"C. A. Williams,
"Building Inspector."

Norris conferred with some property owners before he leased the property, and they did not object to the erection and operation of the filling station.

Earl Henderson, city clerk, testified that the record did not show any permit to Norris, but showed the issuing of a permit to Kendall, and the clerk also testified that the publication of notice was by J. C. Kendall, and the notice was introduced in evidence.

Norris was recalled, and testified that he made the application in the name of his partner, Mr. Kendall.

There was proof introduced showing that the value of the property was approximately $3,500, and showing that the permit to Kendall had been canceled.

A number of witnesses testified about the noise and inconvenience of a filling station at the place and as to whether it would or would not decrease the value of the property. The city of Fort Smith has no zoning district, but it has ordinances which require any one that wants to build a filling station to advertise, etc. The first section of the ordinance makes it unlawful to build or main-

tain a filling station in the city without obtaining permission, and requires an applicant for permission to give ten days' notice by publication in the daily papers, for three consecutive days, of the intention to apply for such permission. The notice must state the place or location of the proposed filling station and the time when application will be made. If there is any remonstrance, a date is fixed for hearing, and a hearing is had upon the application and remonstrance.

The ordinance provides that the term, "filling station," shall include any place where gasoline or oil is sold for use in automobiles or trucks, and it provides for punishment for violation of the ordinance. The particular part of the ordinance involved here is that, if the commission shall decide that the erection of such filing station will endanger the public peace or safety of the residents of such community, or constitute a nuisance, or create an additional fire hazard, the commission shall take these facts into consideration in passing upon the application. And, if the commission determines that the filling station would not be in the interest of the welfare of the community affected, then said commission shall deny said permission.

In this case it is not contended that the filling station would endanger the public peace or safety of the residents or create additional fire hazard. The appellant contends for a reversal on the ground that the erection and operation of the filling station at the place proposed would interfere with the peace, comfort and repose of the plaintiffs in the suit against Norris. They cite and rely on *Huddleston* v. *Burnett*, 172 Ark. 216, 287 S. W. 1013. In that case the court said:

"The testimony introduced was directed to the sole issue presented by the pleadings, of whether the operation of a filling station and garage in that particular locality would constitute a nuisance that would result in irreparable damage to appellee. The trial court found that it would, and permanently enjoined the construction thereof, so the correctness of the finding and decree is

before us for trial *de novo*. The construction and operation of a filling station and public garage is a lawful business, and not a nuisance *per se*, but one cannot prosecute a lawful business in the neighborhood of a dwelling-house if the noise therefrom would render the enjoyment of it materially uncomfortable."

The court also said in that case:

"A decided preponderance of the testimony adduced in the case was to the effect that the operation of a filling station and public garage upon the lot purchased by appellants for that purpose would produce a disturbing noise in the neighborhood, and particularly interrupt the peace and quietude of appellee's home. The witnesses testified that a great many people on the much-traveled highway would stop and honk their horns for gas, and create much noise in stopping and starting their automobiles, testing their motors, etc. It strikes us that the creation of incessant noises of this character, in a strictly residential section, would constitute an intolerable nuisance in the neighborhood."

In the case above referred to the filling station was to be built not only in the residence section of the town of Atkins, but the lot upon which it was to be built adjoined appellee's home on the east and Mrs. T. J. Robinson's home on the west. Testimony also showed that thousands of automobiles and trucks passed upon the highway daily, and, in the tourist season of the year, passed both day and night. Appellee's home was not only in a residence section, but located five or six blocks away from the business district.

Leigh Kelley testified that Mrs. Sophronia Alexander was his mother-in-law, and he acted as her agent in purchasing the property where she resides, and which, it is contended, the erection of the filling station would damage. This filling station is to be erected across the lot, not directly, but at a slight angle, about 100 feet from her property. The Hays property is also across the road from where the filling station is to be erected. There are no other business houses in the immediate vicinity.

Kelley testified that around filling stations there is always trouble about traffic, about turning in, or a car going in and out. There is a certain amount of noise where the cars turn in and blow their horns for gas and oil, and a considerable amount of noise caused by minor adjustments to the motor, or starting a motor. He also testified that at nights automobiles turn into the filling station and throw their lights through the windows.

It will be remembered that the case referred to by appellants was a complaint about the erection of a filling station and a public garage, and a decided preponderance of the testimony showed in that case that the operation of the filling station and garage would produce a disturbing noise in the neighborhood; that a great many people on the much traveled highway would stop, honk their horns, and create much noise in stopping and starting and in testing their motors, etc.

In the instant case the preponderance of the evidence shows the contrary. One of the chief complaints in the instant case is that it would throw the lights of the automobiles in at the windows, but this testimony is conflicting, and the witness Kelley himself says that it is true that the Henderson house and Mrs. Black's house are on a terrace, but cars coming west on Free Ferry Road are higher up in the air. It might be possible for those cars to turn to the left and sweep those two houses with their lights.

Witness lives about three-eighths mile from this place where the filling station is to be erected. He says he thinks it will affect him, but he does not tell how. He admits that it will not reduce the value of his home at the present time, but may be a serious detriment later on.

Mr. T. J. Hays testified that the building of the station would not decrease the value of the property.

The next case referred to by appellants and relied on as authority for reversal is *Chaplain Refining Co.* v. *Dougan*, Okla., 270 Pac. 559. In that case the trial court found that the appellee's property was in an exclusively residential district, and that the appellant was threaten-

ing to erect and had begun the construction of a public drive-in filling station near the residence of the property of the plaintiffs, and within 20 feet of the residence of Dougan; that it was the intention to operate it from 7 A.M. to 9:30 or 10 P.M. each day in the week, including Sundays, and that the automobiles and other motor-driven vehicles using gas and oil, getting water and air, would be continuously going in and out from early morning until late at night, stopping and starting, and that loud and unusual noises made by the cars and motor-driven vehicles and the reflection of lights from cars would constitute and be a continuous physical discomfort and mental and physical annoyance to the plaintiffs. And the Supreme Court of Oklahoma held that, upon examination of the record, it showed that the findings of the trial court were not clearly against the weight of evidence, and therefore, before they would be justified in reversing the judgment, they would have to say that the proposed filling station within 20 feet of the residence of one plaintiff and 100 feet from the other would not constitute such a nuisance as the court of equity would enjoin. And the court further found in that case that "it clearly appears to us that the installation and operation of a drive-in filling station would interfere with the peace, comfort and quiet of plaintiffs, whose property is located within a strict residential district of Enid," and that they should be protected against the annoyance and disturbance which would be caused by the said nuisances.

In the instant case the preponderance of the evidence fails to show that the filing station, where it is proposed to be erected, would constitute a nuisance.

There is no dispute about the law. In the instant case, however, it is a question of fact, and we cannot say that the findings of the chancellor were against the preponderance of the evidence. In fact, we think that a preponderance of the evidence sustains the chancellor's findings. Unless the findings of a chancellor are against the preponderance of the evidence, this court will not reverse. The law as to nuisance and what will constitute a nui-

sance and justify a court of equity in enjoining it are well settled by the decisions of this court, but we deem it unnecessary to refer to those decisions or comment upon them, because, as we have already said, the decision of this case depends upon the evidence.

If the filling station, because of the manner of its operation, should at any time become a nuisance, it could be abated.

The chancellor's findings, being sustained by the evidence, must be affirmed.