MITCHELL *v.* DEISCH.

Opinion delivered June 17, 1929.

*Cockrill & Armistead, W. A. Utley* and *Shields M. Goodwin,* for appellant.

*Hal L. Norwood,* Attorney General, for appellee.

KIRBY, J., (after stating the facts). Under § 4 of act 113 of 1923 the board was given authority and had the discretion to select a suitable site for the establishment of a tuberculosis sanatorium for negroes, and were directed in making such selection to locate the institution at such point in the State "as shall appear to them" to be more nearly in the center of the negro population of the State. They made this selection for the site of lands in Saline County that they regarded most suitable as a site for the establishment of the sanatorium, regarding it as a compliance with the statute because of its accessibility. There is no intimation that the site is not most suitable for the location of such sanatorium, as the evidence shows it to be, nor any suggestion made that one more suitable could be found elsewhere in the State, but only an insistence that the statute was violated by the board in not selecting lands for the site more nearly in the actual geographical center of the negro population of the State.

The statute is only directory in its terms, leaving the board the discretion to place the institution at such point in the State "as shall appear to them," etc. There is not a scintilla of testimony indicating bad faith on the part of the board in the selection of the site as made, and the General Assembly, under act 277 of 1927, knowing of the selection under the authority given the board for the purpose, made an appropriation of moneys for the erection of the necessary buildings and improvements "on the lands heretofore acquired for the purpose of a negro tuberculosis sanatorium." This was an approval by the Legislature of the selection of the site for the sanatorium by the authorized agency of the State, amounting to a ratification thereof, even if any such ratification had been necessary, and the chancellor did not err in so holding.

The argument is without force therefore—the Legislature having decided that question—that the establishment of a negro tuberculosis sanatorium in a county containing so small a negro population and inhabited almost entirely by white people is a departure from the State's policy of the segregation of the races, since that is a matter with which the court is not concerned, the policy of legislation and its expediency being questions peculiarly within the province of the lawmaking power. *Scalles* v. *State,* 47 Ark. 476, 1 S. W. 769, 58 Am. Rep. 768; *State* v. *Bain,* 172 Ark. 480, 289 S. W. 384; *Cone* v. *Garner,* 175 Ark. 860, 3 S. W. (2d) 1.

In modern times a sanatorium is not only considered a beneficent institution, but a public necessity, and certainly its establishment cannot be regarded a nuisance *per se.* The chancellor did not find that its establishment and operation would cause irreparable injury to the appellants, and, at best, the testimony conduced to show that any injury to the market value of the land would be only temporary, and not irreparable, not furnishing sufficient grounds for equitable relief. *Gus Blass Co.* v. *Reinman,* 102 Ark. 294, 143 S. W. 1087; 2 Story's Eq. Juris., 926; Joyce on Nuisances, 427; Wood on Nuisances, 778; *McDaniel* v. *Forest Park Cemetery Assn.,* 156 Ark. 571, 246 S. W. 874. For cases in other jurisdictions denying injunctive relief against the maintenance of hospitals see *Jardine* v. *Pasadena,* 190 Cal. 64, 248 Pac. 225, 48 A. L. R. 509; *San Diego Tuberculosis Assn.* v. *East San Diego,* 186 Cal. 252, 200 Pac. 393, 17 A. L. R. 513; *Tompson* v. *Evangelical Hospital Assn.,* 111 Neb. 191, 196 N. W. 117, 32 A. L. R. 721; *Cook* v. *Fall River,* 239 Mass. 90, 131 N. E. 346, 18 A. L. R. 119; *Northfield* v. *Board of Chosen Freeholders of Atlantic County,* 85 N. J. Eq. 47, 95 Atl. 743; *Board of Health* v. *North American Home,* 77 N. J. Eq., 78 Atl. 677; *LeBourgeoise* v. *New Orleans,* 145 La. 274, 82 So. 268.

We find no error in the record, and the decree is affirmed.

MEHAFFY, J., (dissenting). I do not agree with the opinion of the majority in its construction of the statute involved. Section 4 of the act is as follows:

"As soon after the organization of said board as practicable said board shall select a suitable site for the establishment of a tuberculosis sanatorium for negroes, and in selecting said site they shall place institution at such point in the State as shall appear to them to be more nearly in the center of the negro population of said State."

The majority opinion says that this institution was placed in Saline County by the board because it was a site that they regarded as the most suitable and that they regarded as in compliance with the statute because of its accessibility. It is true that the testimony of the board showed they thought they had a right to locate it there, but the testimony conclusively shows that the board ignored that part of the section which says "they shall place institution at such point in the State as shall appear to them to be more nearly in the center of the negro population." Nobody claims that it appears to them to be anywhere about the center of the negro population, but the undisputed proof shows that it is not in the center of the negro population, and the board did not think that it was.

The chancery court found from the evidence "that said lands are not in or near the center of the negro population of said State, and that said board, in selecting said lands as a site for said sanatorium, did not conform to the requirements of § 4 of said act No. 113 of 1923, but exceeded the discretion conferred upon said board by said act."

The chancery court, however, denied the injunction and dismissed the complaint because it held that the act of 1927 ratified and approved the selection by the board, and, in effect, held that in passing the act for the appropriation for the negro sanatorium the Legislature repealed the provision in the act of 1923 requiring the

board to place the institution in the center of the negro population.

The title of the act of 1927 is as follows: "An act to make available funds for the construction and maintenance of the tuberculosis sanatorium for negroes as authorized by act No. 113 of the Acts of the General Assembly of 1923."

The title states fully the purpose of the act. It was simply an appropriation bill, passed as such, and doubtless the members of the Legislature paid no attention to it, except to ascertain that it was an appropriation for a tuberculosis sanatorium for negroes. If the section means what the majority held it meant, then there was no reason at all for the latter part of § 4. The first part of the section requires said board to select a suitable site, and, giving effect to every clause of the act, as we must, the act required the board to select it in or near the center of the negro population. The Legislature meant something when it put this provision in the law, but the majority held that it is directory only. We cannot agree to this interpretation of the statute. I agree with the majority that the policy of legislation and its expediency are questions peculiarly within the province of the law-making power. I think that the policy of the State is clearly manifested in providing separate schools, separate churches and separate coach laws for the races. This has been the policy of the State of Arkansas consistently, and the passage of the act in question containing the clause referred to is in line with the policy adopted by the Legislature and the people of the State of Arkansas. The policy has been and is to separate the races, providing separate but equal accommodations for each race, and the decision of the majority has abrogated that part of the section that directed the board to locate the institution in the center of the negro population.

The proper construction of the statute is a question for the court, and it must confine itself to the construction of the law as it is, and not undertake to supply defective legislation under the guise of construction. It is the

duty of the court to carry out the intention and policy of the Legislature. The intention of the Legislature means the intention as expressed in the statute, and where the meaning of the language used is plain it must be given effect by the courts, or that would be assuming legislative authority. 36 Cyc. page 1103.

I believe the Legislature meant what it said, and I believe that the statute is mandatory. Where the provisions of a statute relating to public officers, tribunals or bodies are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory, but mandatory. It is not necessary that a statute should in direct terms declare the duty of an officer in order to make it an imperative one. 25 R. C. L., page 770.

I believe that the Legislature intended that the tuberculosis sanatorium for negroes should not be located among the whites, and I think that the Legislature would refuse to locate a tuberculosis sanatorium for white people among the negroes. One would be as bad as the other, and each, in my judgment, would be in violation of the policy of the State. I think in the passage of the law the Legislature recognized and knew it would be unwise to locate the negro institution in a white settlement or to locate a white institution in a negro settlement, and I think therefore that the selection by the board of the place in Saline County was a violation of the statute, and that a restraining order should have been granted.

Chief Justice HART and Mr. Justice HUMPHREYS agree with me in these conclusions.