POWELL *v.* TAYLOR.

5-266                                         263 S. W. 2d 906

Opinion delivered January 11, 1954.

Rehearing denied February 15, 1954.

*Lookadoo & Lookadoo,* for appellant.

*Bobby Steel* and *Shaver, Tackett & Jones,* for appellee.

GEORGE ROSE SMITH, J.   This is a suit brought by six residents of Gurdon to enjoin the appellees from establishing a funeral home in a residential district within the city.   The defendants intend to remodel a dwelling known as the Taylor place and to use it as a combined residence and undertaking parlor.   The plaintiffs, who own homes nearby, objected to the proposal and offered to reimburse the defendants for the preliminary expenses already incurred.   This effort to dissuade the defendants having failed, the present suit was filed.   The chancellor denied relief upon the ground that the neighborhood is not exclusively residential.

On this particular subject the law has undergone a marked change in the past fifty years.   Until about the

end of the nineteenth century the only limitation upon one's right to use his property as he pleased was the prohibition against inflicting upon his neighbors injury affecting the physical senses. Hence the older cases went no farther than to exclude as nuisances in residential districts, such offensive businesses as slaughter-houses, livery stables, blasting operations, and the like.

Today this narrow view prevails, if at all, in a few jurisdictions only. It is now generally recognized that the inhabitants of a residential neighborhood may, by taking prompt action before a funeral home has been established therein, prevent its intrusion. In 1952 the Supreme Court of Louisiana reviewed the more recent decisions in twenty-two States and found that nineteen prohibit the entry of a mortuary into a residential area, while only three courts adhered to the older view. *Frederick* v. *Brown Funeral Homes, Inc.*, 222 La. 57, 62 S. 2d 100. In a case-note the matter is summed up in these words: "The modern tendency to expand equity's protection of aesthetics and mental health has led the majority of jurisdictions to bar funeral homes or cemeteries from the residential sanctuaries of ordinarily sensitive people." 4 Ark. L. Rev. 483. These decisions rest not upon a finding that an undertaking parlor is physically offensive but rather upon the premise that its continuous suggestion of death and dead bodies tends to destroy the comfort and repose sought in home ownership.

We have already announced our preference for the view that permits the citizens of a residential district to make timely objection to its invasion by a funeral home. In *Fentress* v. *Sicard*, 181 Ark. 173, 25 S. W. 2d 18, we set aside the chancellor's injunction only because the neighborhood was changing to a business district, having already acquired drug stores, filling stations, grocery stores, etc. In that opinion we said, with reference to the proposed mortuary: "If the district of the location was an exclusively residential one, its intrusion therein would ordinarily constitute a nuisance, and could be prevented by injunction."

It is our conclusion in the case at bar that the neighborhood in question is so essentially residential in character as to entitle the appellants to the relief asked. The Taylor place is situated at the corner of Eighth and East Main Streets, and the testimony is largely directed to the area extending for two blocks in each direction, or a total of sixteen city blocks. In a relatively small city an area of this size may well be treated as a district in itself, else there might be no residential districts in the whole community. Gurdon is a city of the second class, having had a population of 2,390 in the year 1950. It is not shown to have adopted a zoning ordinance.

This square of sixteen blocks is bounded on the west by a public highway which is bordered by commercial establishments, their exact nature not being shown in detail. Otherwise the neighborhood is exclusively residential in appearance and almost so in its actual use. A seamstress living two doors east of the Taylor place earns some income by sewing at home. The couple in the house just south of the Taylor place rent rooms to elderly people and take care of them when they are ill. J. T. McAllister lives diagonally across the intersection from the Taylor place. He is in the wholesale lumber business and uses one room as an office, keeping books there and transacting business by telephone and with persons who call. A photograph of this home shows that there is no sign or anything else to indicate that business is carried on there. Farther up the street an eighty-year-old dentist has a small office in his yard and occasionally treats patients. The testimony discloses no other commercial activity within the area.

On the other hand, the residential quality of the neighborhood is convincingly shown. A real estate dealer describes it as the best residential section in Gurdon. Estimates as to the value of various homes range from $15,000 to $35,000. Many inhabitants of the area confirm its residential character and earnestly protest the entry of the mortuary. One, whose wife suffered a mental illness some years ago, says that he will be forced to move away if the funeral home is established. Another

testifies that he will not build a home on his vacant lots across the street from the Taylor place if it is converted to a funeral parlor. A third testifies that she lost interest in buying the house next to the Taylor place when she learned of the defendants' plans. It is true that other witnesses state that they have no objection to the proposal, and the chancellor found that property values will not be adversely affected. But we regard the residential character of the vicinity as the controlling issue, and the evidence upon that question preponderates in favor of the appellants.

Reversed.

MINOR W. MILLWEE, Justice, dissenting. As I read the opinion of the majority, it is now the law in Arkansas that the operation of a modest undertaking parlor in a mixed residential and business area of a city of the second class constitutes a nuisance *per se* and may be abated as such by injunction. This holding is so foreign to the traditional attitude of this court and the general legislative policy of this state that I must respectfully dissent.

While the majority conclude that the area in question here is "essentially" residential, they proceed to apply the so-called "modern rule," which is, in those jurisdictions which recognize it, only applicable when the affected area is "exclusively" or "purely" residential. Since this goes far beyond any of the authorities cited by the majority, I suppose it should be dubbed the "ultra modern rule." It is perfectly apparent from the detailed description of the majority that the area affected here is a mixed commercial and residential one and that the chancellor was eminently correct in holding that it was not "exclusively" residential. This determination by the chancellor is in my opinion fully supported by the great preponderance of the evidence.

Moreover, the majority failed to mention the fact that appellees' contemplated operation does not include the holding of funerals or the maintenance of noisy ambulances—factors which usually accompany the operation of a funeral home. Nor does the instant case contain

factors presented by the proof in the cases relied on by the majority, such as the escape of noxious odors, the depreciation of values in surrounding properties, the ability of neighbors to see the taking in or carrying out of bodies or that they will be rendered more susceptible to contagious diseases. On the contrary, it is undisputed that the structure planned by appellees will greatly improve the beauty of the neighborhood, that there will be no noise from ambulances and no escape of odors or gases. It was further shown that within a radius of two blocks from appellees' property there is a nursing home, a dentist office, a real estate office, a lumber office, a seamstress place of business, service station, boat factory, lumber company office, church and a hospital. Two blocks away is the business district on Highway 53, and three and a half blocks away is a bulk gas plant. This could hardly be called a purely residential section.

In denying an injunction, the able chancellor stated in the decree: "The rule is well settled that no injunction should be issued in advance of the construction of a legal structure, or in advance of the operation of a legal business, unless it be certain that the same will constitute a nuisance; and, where the claim to relief is based on the use which is to be made of a lawful business, the Court will ordinarily not interfere by injunction in advance of actual operation.

"Since the funeral home in the instant case is not a nuisance *per se* and may be operated in such a manner as to not become a nuisance, the rule that Chancery Courts will not issue an injunction in advance of actual operation, but will leave the complainants to assert their rights thereafter, if the contemplated use results in a nuisance, is applicable and controlling in the case at bar."

Under our decisions it is difficult to see how the trial court could have reached any other conclusion. The rule which he declared has been consistently applied in numerous cases involving most every character of lawful business or operation. Among these are: a livery stable, *Durfey* v. *Thalheimer*, 85 Ark. 544, 109 S. W. 519; a cotton

gin, *Swaim* v. *Morris,* 93 Ark. 362, 125 S. W. 703; a filling station, *Fort Smith* v. *Norris,* 178 Ark. 399, 10 S. W. 2d 861; a cemetery, *McDaniel* v. *Forrest Park Cemetery Co.,* 156 Ark. 571, 246 S. W. 874; a hide and fur business, *Fort Smith* v. *Western Hide and Fur Co.,* 153 Ark. 99, 239 S. W. 724; an ice plant, *Bickley* v. *Morgan Utilities Co., Inc.,* 173 Ark. 1038, 294 S. W. 38; a tuberculosis sanatorium, *Mitchell* v. *Deisch,* 179 Ark. 788, 18 S. W. 2d 364; a quarry and rock crusher, *Jones* v. *Kelley Trust Co.,* 179 Ark. 857, 18 S. W. 2d 356; a tabernacle, *Murphy* v. *Cupp,* 182 Ark. 334, 31 S. W. 2d 396; a sawmill, *Eddy* v. *Thornton,* 205 Ark. 843, 170 S. W. 2d 995; a bowling alley, *Kimmons* v. *Benson,* 220 Ark. 299, 247 S. W. 2d 468.

In the McDaniel case, *supra,* we adopted the following as a well settled rule: "The unpleasant reflections suggested by having before one's eyes constantly recurring memorials of death is not such a nuisance as will authorize the intervention of equity." In the Kimmons case, *supra,* we reaffirmed the rule that we would decline to enjoin the erection of a lawful business structure where there is a doubt that it would prove to be a nuisance. Certainly appellees are entitled to the benefit of that doubt by the great preponderance of the evidence in this case.

About the only businesses or operations which this court has seen fit to enjoin as nuisances *per se* are: a gaming house, *Vandeworker* v. *State,* 13 Ark. 700; a bawdy house, *State* v. *Porter,* 38 Ark. 637; and the standing of a stallion or jackass within the limits of a municipality, *Ex parte Foote,* 70 Ark. 12, 65 S. W. 706. To this select group must now be added the operation of a modest undertaking parlor, where no funerals are to be held, in an area of a city of the second class which is "essentially" but not "actually" or "exclusively" residential.

It should be a matter of common knowledge that there are scores of undertaking establishments located in residential, or mixed residential and commercial, areas of the smaller municipalities in this state with hundreds of thousands of dollars invested in them. Under the rule proclaimed today these enterprises are placed in a most pre-

carious position. And in the future many citizens, such as the appellees, will be denied the privilege of pursuing a dignified and lawful calling in places where their services would be highly welcome and most sorely needed. I cannot agree to this rule.

Justice McFADDIN joins in this dissent.