TROY C. HODGE v. CITY OF MARMADUKE ET AL

73-111                                     503 S.W. 2d 174

Opinion delivered December 24, 1973
[Rehearing denied January 28, 1974.]

---

*W. B. Howard* and *Jack Segars*, for appellant.

*Alfred J. Holland* and *Kirsch, Cathey, Brown & Goodwin*, for appellees.

GEORGE ROSE SMITH, Justice. This case centers upon the asserted pollution of a drainage ditch and a water well. The appellant, as the owner of the lands upon which the ditch and well are situated, brought suit to enjoin the city of Marmaduke from continuing to discharge into the ditch the effluent from the municipal sewage treatment plant. Sewer Improvement District No. 1 and certain taxpayers are also parties to the suit, but for convenience we will refer only to the city. The chancellor refused to issue the requested injunction, finding that the city had acquired a prescriptive right to the use of the ditch and that the plaintiff's water well was not actually being affected by the city's activity. The appellant questions the sufficiency of the evidence to support each of those findings.

Hodge owns extensive farm lands that are bounded on the south by State Highway 34. Along the north edge of the highway, and admittedly upon Hodge's land, there is a large drainage ditch that varies from 3 to 18 feet in depth and from 21 to 65 feet in width. For forty years or more the city of Marmaduke has discharged the surface water from its streets into the ditch. The appellant concedes that the city has acquired a prescriptive right to use the ditch for the disposal of surface water.

In 1962 the city completed the construction of a settling basin, or lagoon, for the treatment of sewage. The lagoon is on the south side of Highway 34, approximately across the road from the western part of Hodge's property. The city provided an outlet from the lagoon into the ditch by laying a tiled duct under the highway— a project that closed the highway to traffic for about ten days. The city had discharged the effluent from the lagoon into the ditch for almost ten years when this suit was brought in 1971.

Apparently the suit was precipitated by the fact that the lagoon finally filled up to such an extent that it no longer converted sewage into an acceptably harmless effluent. While the suit was pending the city constructed a second lagoon, which concededly corrected the deficiency that had developed. The chancellor's final decree was entered after the second lagoon was in operation and had proved to be efficient.

We consider first the city's asserted prescriptive right to use the drainage ditch as an outlet for its treatment plant. Although there are comparatively few cases involving the acquisition of a flowage easement by adverse use, the parties are not in disagreement about the law. The basic principles of adverse possession are applicable. As the Nebraska court said in *Courter* v. *Maloley*, 152 Neb. 476, 41 N.W. 2d 732 (1950); "That an easement may be acquired by prescription for the flow of waters there can be no doubt. Such an easement however cannot be acquired except by open, notorious, exclusive, and adverse use for a period of ten years." (In Arkansas the period is only seven years.)

The appellant, in insisting that the city did not acquire an easement by prescription, relies upon *LeCroy* v. *Sigman*, 209 Ark. 469, 191 S.W. 2d 461 (1945), where we held that in order for a person to acquire a prescriptive easement across unenclosed and unoccupied property—in that case a vacant city lot—he must show some circumstance or act of hostility indicating that the use was not merely permissive. It is argued that here the city failed to make that showing.

We do not find the chancellor's contrary conclusion to be clearly against the preponderance of the evidence, the issue being one of fact. Two circumstances support the chancellor's decision. First, when the original lagoon was created in 1962 the public highwy was blocked for ten days while the conduit was being laid from the lagoon to the ditch. Not only that construction work but also the discharge of the effluent into the ditch were obvious to anyone using the highway. Hodge, whose land was just across the road, does not say that he was unaware of what was taking place. Thus he must have

known that the city was incurring substantial expense in creating a new access to the ditch, for the discharge of something more than mere surface water. It is fair to say that Hodge was not justified in assuming that the city's use of the ditch was merely permissive and therefore subject to his veto at any time.

In the second place, we are not convinced that Hodge's land was unoccupied within the *LeCroy* rule. His cultivation of his fields stopped at the edge of the ditch. He now argues that, even so, the ditch itself was unoccupied land, since trees and other vegetation had grown up within it. That situation, however, cuts both ways. It is equally reasonable to say that the ditch was occupied by those who were asserting a flowage easement therein and that therefore the cessation of Hodge's cultivation at the edge of the ditch amounted to a recognition of the adverse user. We conclude that the chancellor's finding of a prescriptive right must be sustained.

The second point for reversal involves the water well near Hodge's residence. Here the candor of Hodge himself and of his counsel lightens the difficulty of our decision. The water from the well has a slightly unpleasant odor, but that is admittedly due to iron and sulphur in the soil. It is also admitted that even if the effluent from the treatment plant percolates from the ditch into the well—an issue of fact upon which the evidence is in dispute—the resulting impurity of the water is physically harmless to the health of one who drinks it. Moreover, the testimony indicates that the State Department of Health found the expanded municipal sewage treatment plant to conform to ecological standards.

Hodge testified that when he discovered, just before this suit was filed in 1971, that there was at least some minimal percolation from the drainage ditch to his water well, he stopped using that water for household purposes and thereafter hauled in all the water needed for domestic use. The chancellor found that there was in fact no percolation of the effluent from the ditch to the well, but the appellant insists that the proof preponderates against that conclusion.

The factual issue is a close one, upon which we are not persuaded that the trial judge's finding of no percolation is clearly against the weight of the proof. There is, however, another reason for affirming the decree. Hodge admits that the water, even if impure, is harmless to health; but he insists that the city's maintenance of the treatment plant is a private nuisance, because as a reasonably sensitive person he is justified in his unwillingness to drink water that may be traced in part to a plant where human sewage is treated. He relies upon such cases as *Powell* v. *Taylor*, 222 Ark. 896, 263 S.W. 2d 906 (1954), where we held that the maintenance of a funeral home in a municipal residential district may be enjoined as a nuisance, simply because such an establishment, though not physically offensive, tends by its continuous suggestion of death and dead bodies to destroy the comfort and repose sought in home ownership. Hodge argues, upon the same premise, that the contamination of his well, even though not physically harmful, is so offensive as to amount to a nuisance that should be abated.

We think the force of that argument to have been blunted by the passage of more than seven years, during which the challenged condition existed continuously. In the *Powell* case the neighboring landowners brought their suit at once, not after the asserted nuisance had been tolerated for many years. That fact distinguishes that case from this one. We do not hold—we do not even imply—that one who pollutes a stream without objection for more than seven years acquires a prescriptive right to continue. We do hold, however, that when, as here, the discharge is regarded as lawful and harmless by the public authorities, one in Hodge's present position cannot complain after having tolerated the situation for more than seven years. Of course our opinion does not foreclose Hodge's right to relief if the second lagoon eventually fails, as the first one did, with the result that improperly treated sewage is piped into the ditch.

Affirmed.

HARRIS, C.J., not participating.