BLAIR *v.* YANCY.

5-1694 318 S. W. 2d 589

Opinion delivered December 8, 1958.

*H. B. Stubblefield,* for appellant.

*Gentry & Gentry,* for appellee.

J. SEABORN HOLT, Associate Justice. On March 28, 1958, appellant, Blair, purchased a piece of property at 1514 Maryland (West 9th Street) in Little Rock, for the purpose of establishing thereon an embalming business. This property was zoned for business and commercial purposes and following the issuance of a permit to him, by the city, to engage in the embalming business on the property, Blair began the construction of a building 14 feet wide, 22 feet long and about 9 feet high. After he had expended about $1,000 on the property a number of citizens residing in the area filed a petition seeking to enjoin appellant from establishing an embalming business on the property on the ground that it would be a nuisance. The trial court granted appellees the injunctive relief prayed and this appeal followed.

For reversal appellant earnestly contends that the business involved is located in a neighborhood which is predominately commercial now, and is growing as a business area—crowding out residences, and that such business would not be a nuisance, and that the chancellor erred in holding otherwise. After a careful review of the testimony, which is conflicting, we have concluded that the preponderance thereof supports appellant's contention.

Equity will not prohibit the erection of a building on the ground that it would become a nuisance unless, as we said in *Kimmons* v. *Benson,* 220 Ark. 299, 247 S. W. 2d 468, ". . . the preponderance of the testimony shows that the activity is certain to be a nuisance. *Murphy* v. *Cupp,* 182 Ark. 334, 31 S. W. 2d 396; *Buckner* v. *Tillman,* 195 Ark. 149, 110 S. W. 2d 1060." Our governing rule in cases such as the one presented here is stated in *Fentress* v. *Sicard,* 181 Ark. 173, 25 S. W. 2d 18, wherein this court reversed the Sebastian Chancery Court

which had entered a decree enjoining the location and operation of a funeral home on a certain side in the City of Fort Smith and directed that the injunctive relief sought be denied. We there said: "The proof shows that there will be little, if any, noise from the ambulances and other vehicles used. No noise from funeral services will be heard without the building, and there will be no escape of odors or gases from the building, except through the roof to the open air. The district has long been a residential district, and fully developed, no new residences having been erected there for a long time. The testimony shows it is in a state of transition from an exclusively residential district to a business district, many places of business—drug stores, filling stations, pressing parlors and grocery stores—having already been established . . . The chancellor's decree was based largely upon the common knowledge that the people residing in the vicinity would be affected in their feelings by the establishment of the mortuary, which would bring discomfort to all because of the constant reminder of death and that on that account largely the establishment and operation of the institution upon the proposed site would interfere with the proper enjoyment of the homes of the residents in the vicinity already long established there. There is no zoning ordinance in the City of Fort Smith, but the city commission granted a permit for the construction of the mortuary upon the site selected . . . The authorities are well nigh uniform in holding that a mortuary or undertaking establishment of the kind complained of here is not a nuisance *per se*. It may become a nuisance, however, by reason of its location in a residential district or from the manner in which it is operated. In 46 C. J., p. 726, it is said: 'An undertaking establishment or funeral parlor is not a nuisance *per se,* but by reason of surrounding circumstances it may become a nuisance. It may constitute a nuisance by reason of its location, as, for instance, under particular circumstances, when it is located in a residential district, notwithstanding, it has been held, it does not directly affect the health or grossly offend the phys-

ical senses; but it is more frequently held that the mere location in a residential section is not sufficient to make such an establishment a nuisance.' If the district of the location was an exclusively residential one, its intrusion therein would ordinarily constitute a nuisance, and could be prevented by injunction. Change is the order of time however, that progress and development may not be hindered or obstructed, and the transition from a residential district into a business district is recognized and has been effected.''

Blair testified, in effect, that his operations on the property would be the same as he was operating at 5th and Cross Streets in Little Rock; that Little Rock is a hospital center and numerous deaths here are taken care of by funeral directors out over the state who want the deceased removed from the hospital and embalmed so they can remove the body to their own establishment; that he owns and will use a Nash Rambler station wagon with no glass panels in the sides and that there is nothing about it suggesting death. He further testified that this building, where the embalming will actually take place, will have two windows on the west side, both above the height of the average person's head, and while they permit light they will be blacked out so no one can see through them; that there would be a solid wooden door 3 feet in width in each end of the building which would be kept closed except the south door would be opened to receive or remove a body; that on the south side a fence about 6 feet in height would prevent anyone witnessing the loading or unloading of a body at the building. He further testified there was nothing offensive or objectionable in connection with his embalming business; that he averaged about three bodies a week; and there would be no ambulances with sirens going to or coming out of his place of business.

Mr. Spencer Plowman testified that he was with the real estate firm of Weaver and Company in Little Rock and had been in the real estate business for about 28 years; that the proposed building for the embalming business would be situated adjoining a brick garage

building having a cyclone fence with barbed wire top along the east side of the proposed building; across the street to the south is a building that is occupied by Finkbeiner Packing Company. In the next block west on the south side of Maryland is the Drummond Funeral Parlor; on the southeast corner of Maryland and High is a row of stores, including a liquor store; there is a little variety store on the northeast corner and on the southwest corner of the block adjoining this property to the east there is a filling station. He further testified, that in his opinion, this particular area is undergoing the transition from residential to commercial which is very often accompanied by difficult situations. The property is becoming commercial, and in his opinion is losing whatever residential character it had. Property in such a locality lessens in value for residential purposes and has a tendency to increase for commercial or business purposes.

Mr. Howard Thom testified that he had been in the real estate business in this city for about 25 years; that the property involved at 1514 Maryland is next to Finkbeiner's garage; that the driveway to this embalming building 14x22 feet is on the east side of the house at 1514 Maryland next to the garage and parking lot used by Finkbeiner's trucks, and that in his opinion that the completion of that building on Mr. Blair's property and the operation of an embalming business there would not affect the value of adjacent or nearby property one way or the other either from a residential standpoint or business.

A number of other witnesses appeared and their testimony tended to corroborate the above testimony. While appellees, as we have indicated, produced a number of witnesses which tended to contradict appellant's evidence, however, on the whole record we are convinced that the preponderance thereof shows that this property is in a section of the City of Little Rock that is predominately commercial and growing as such.

The decree is reversed with the directions to deny injunctive relief prayed for by appellees.