NORTH HILL MEMORIAL GARDENS *v.* HICKS.

5-1882                                      326 S. W. 2d 797

Opinion delivered June 1, 1959.

[Rehearing denied September 7, 1959]

*Howell, Price & Worsham,* by *Dale Price,* for appellant.

*Ike Murry* and *John F. Park,* for appellee.

JIM JOHNSON, Associate Justice. This case involves an attempt to prohibit the establishment of a cemetery near North Little Rock, Pulaski County. Pursuant to Act 250 of 1953 (Secs. 82-411 through 82-426, Ark. Stats., 1957 Supplements), the Arkansas Cemetery Board issued a cemetery permit to appellant Tommy H. Russell, an individual doing business as North Hills Memorial Gardens, to establish, construct and maintain a perpetual care cemetery on 200 acres of land particularly described in the permit. The land is located on Highway 67 between North Little Rock and Jacksonville.

This permit was granted on August 13, 1958. Almost three months thereafter on November 3, 1958, appellees, who are property owners and/or residents in the vicinity of the proposed cemetery, filed this suit requesting a mandatory injunction enjoining the cemetery from operating as such and praying that the permit issued by the Board be cancelled.

A temporary injunction was also prayed for and upon a hearing was refused. At the conclusion of the case the Chancellor's decree was silent as to the injunction, but he cancelled the permit issued by the Board. From the action of the court this appeal followed.

Act 250 of 1953 is primarily a banking measure regulating the creation, maintenance and operation of perpetual care cemeteries. The Cemetery Board is comprised of the State Bank Commissioner as Chairman, and the State Health Officer and the Securities Commissioner of the Bank Department as the other two members. To locate such a cemetery in a rural area, the Act provides that applicant shall secure a recommendation as to the need and desirability from the County Judge. In addition to providing for strict regulations and checks on the trust funds accumulated, Sec. 8 and

Sec. 9, as amended by Act 295 of 1957, (Sec. 82-418 and Sec. 82-419, Ark. Stats. 1957 Cum. Pocket Part), read as follows:

"Upon receipt of the application, the Cemetery Board shall cause the State Health Department to make an investigation of the proposed cemetery location with respect to a sanitary viewpoint. The State Health Department in making any such investigation shall take into consideration the proximity of the proposed cemetery, or extension, to human habitation, the need of a new cemetery, the nature of the soil, the drainage of the ground, the danger of pollution of valuable springs or streams or water and such other conditions as would bear upon the situation. Having completed this investigation, the State Health Department shall promptly submit in writing its approval or disapproval from a sanitary standpoint to the Cemetery Board. In the event the Health Department disapproves the proposed cemetery location, further action on said application shall be suspended until the applicant acquires a location which meets the approval of the Health Department.

"If the applicant has fully complied with all the provisions of this Act (Secs. 82-411—82-426) and if the State Health Department approves the location of the cemetery, the application shall be submitted to the Cemetery Board for investigation and for approval or disapproval. The Board shall immediately upon the submission to it of each application make such investigation as shall enable it to determine the fitness of the applicant, the need, from the public standpoint, and all other questions bearing directly or indirectly upon the need or desirability from the public standpoint of the proposed cemetery. If the application be approved, the Cemetery Board shall issue to the applicant a permit to carry out the proposed undertaking of establishing a new cemetery."

In the instant case the Arkansas Cemetery Board found that appellant met all the rigid requirements of the Act and issued him a permit. We said in *Newton* v. *American Sec. Co.*, 201 Ark. 943, 148 S. W. 2d 311:

"It has been uniformly held by this court that where boards are lawfully appointed and charged with the duty to investigate and determine certain facts, the court cannot substitute its judgment for the judgment of the board, and the judgment of the board provided for the purpose of ascertaining the facts is controlling unless there is evidence that it was arbitrarily exercised."

The burden of proving that the Board's action in granting appellants' permit was arbitrary rested on the appellees. A careful review of the record convinces us that the weight of the evidence falls short of meeting this burden.

There was testimony by appellants' future competitors in the cemetery business to the effect that there was no need for the establishment of an additional cemetery. They cited at great length the number of lots available in established cemeteries in the county. There was no testimony to the effect that the information adduced from these witnesses in the hearing was not available to the Arkansas Cemetery Board which granted appellants permit. The County Judge recommended the need and desirability of the proposed cemetery. The Health Department investigated the need for the cemetery and reported to the board who found that there was a need for the cemetery. In the absence of statute setting out what constitutes the need and desirability of a proposed cemetery we must conclude from the action of the board that other things besides the availability of lots in other established cemeteries are taken into consideration. We find nothing in the Act calculated to create a monopoly in favor of existing cemeteries.

Appellees' witnesses testified that they were afraid that their water wells would be contaminated because of the close proximity of the cemetery. They also testified that some of the proposed cemetery property overflowed during rainy weather. The Sanitary Engineers for the State Health Department, who made extensive investigations of the property according to the terms of the Act, testified unequivocally that the cemetery plots would not contaminate the wells and that the surface

drainage is away from the houses which border the cemetery. There was further testimony by appellees that the location of the cemetery near their property would have a harmful psychological effect on them; that funeral processions would constitute traffic hazards, depreciate the value of their property, restrict the area growth and detract from the beauty of their property.

In *McDaniel* v. *Forrest Park Cemetery Co.*, 156 Ark. 571, 246 S. W. 874, we said:

"As public cemeteries, for the orderly and decent sepulcher of the dead, are necessary requirements for all populous communities, private convenience must yield to the convenience of the public in fixing sites for them, and the courts should be particularly careful not to interfere to prevent such establishments, unless the mischief be undoubted and irreparable. The decided weight of authority may be said to be to the effect that a cemetery is not *per se* a nuisance, and ordinarily in such cases courts of equity will not interfere, but will leave the complainants to an action at law, unless it clearly appears by competent evidence that a nuisance will be brought into existence by the acts of the parties sought to be restrained, and that the party complaining will be injured unless the injunction is granted. Whether a place of interment of the dead is a nuisance depends on the position and extent of the grounds, and especially on the manner in which the burials are effected. If the grounds be arranged and drained, and the burial of the dead be conducted in a proper manner, it will not be a nuisance, either public or private. The unpleasant reflections suggested by having before one's eyes constantly recurring memorials of deaths is not such a nuisance as will authorize the intervention of equity. It is well settled, however, that it is within the province of a court of equity to restrain the location or maintenance of a cemetery which will endanger the public health or operate as a nuisance. Accordingly, when it appears that a place of a sepulcher is so situated that the burial of the dead there will endanger life or health, by corrupting either the surrounding atmosphere or the water of wells or springs, the court will grant its injunctive relief, upon the

ground that the act will be a nuisance of a kind likely to produce irreparable mischief, and one which cannot be adequately redressed by an action at law.''

In addition to the above we found in *Fentress* v. *Sicard,* 181 Ark. 173, 25 S. W. 2d 18, and *Blair* v. *Yancy et al,* 229 Ark. 745, 318 S. W. 2d 589, dealing with funeral parlors and undertaking establishments, that the establishment of such businesses would not be prohibited simply because they might be offensive to adjoining property owners' senses and/or depreciate their property. Therefore, the use of the land as a cemetery, not being a nuisance *per se,* and not having been found a nuisance by the Chancellor, does not constitute an invasion of appellee's property rights. Hence, no notice under the common law or by statute in this State was required to be furnished to adjoining property owners expressing the intention to so establish. This being true, the decree of the trial court cancelling the permit issued by the Board is accordingly reversed.

HOLT and ROBINSON, JJ., dissent.

J. SEABORN HOLT, J., dissenting. I do not agree with the majority view. The cemetery permit to appellants, issued to Tommy H. Russell, an individual doing business as North Hill Memorial Gardens, North Little Rock, to establish a cemetery on 200 acres of land, was issued to him on August 13, 1958. It appears undisputed that on August 27, 1957, one year before granting the present permit to appellant, the Cemetery Board had denied a permit to one Mr. Gardner to establish a cemetery about one mile north of appellant's proposed cemetery and on the same highway toward Jacksonville, Arkansas, on the ground that such cemetery was not needed. In the present case, the Chancellor reversed the action of the Arkansas Cemetery Board and denied the permit primarily on the ground that it was not needed. The decree contains this recital: ''The Court . . . finds that in April 1957 an application was filed for the construction of the cemetery one mile north of the location of the North Hill Memorial Gardens and upon a hearing and

consideration of such application, said Arkansas Cemetery Board on August 28, 1957 found that there was no need for the Cemetery as there were adequate facilities in existing cemeteries; that said existing cemeteries are still adequate and there has been no change in conditions since the denial of that permit as will warrant the need at this time for the establishment of another cemetery in that locality.''

A comprehensive cemetery act was enacted by the Legislature as Act No. 250 in the 1953 session and as amended by Act No. 295 of 1957, now appears as Sections 82-411—82-426 Ark. Stats. Section 82-418 provides: ''Upon receipt of the application, the Cemetery Board shall cause the State Health Department to make an investigation of the proposed cemetery location with respect to a sanitary viewpoint. The State Health Department in making any such investigation shall take into consideration the proximity of the proposed cemetery, or extension, to human habitation, *the need of a new cemetery,* . . .'' and 82-419 further provides: ''If the applicant has fully complied with all the provisions of this Act (Sections 82-411—82-426) and if the State Health Department approves the location of the cemetery, the application shall be submitted to the Cemetery Board for investigation and for approval or disapproval. The Board shall immediately upon the submission to it of each application make such investigation as shall enable it to determine the fitness of the applicant, *the need, from the public standpoint,* and all other questions bearing directly or indirectly upon *the need or desirability from the public standpoint* of the proposed cemetery.''

The 64 appellees here own farms and homes that immediately join, or are across the highway from, appellant's proposed 200 acre cemetery and approximately 100 people live in the neighborhood. Appellees make no claim that a cemetery is a nuisance *per se,* or that it will constitute a nuisance, but rely solely on the ground that this cemetery is not needed. As indicated, a similar permit to a Mr. Gardner for a cemetery within one mile of

the one in question here was denied by the Commission just one year before, *on the ground that it was not needed* and that the available space in the already established cemeteries in Pulaski County, and in that vicinity, was adequate for the needs of that farm community. The evidence shows no change in conditions since. At that time and now the following cemeteries are in operation in Pulaski County: "Roselawn Memorial Park, Edgewood Memorial Park, Forest Hills Memorial Park, Oakland Cemetery, Calvary Cemetery, Haven of Rest Cemetery, Chapel Hill Memorial Park Cemetery and Pine Crest Memorial Park Cemetery." Mr. Willifred Barnhardt testified that he had been engaged in the cemetery business since 1935 and has managed Roselawn Memorial Park until 1950 and is now one of its directors. He testified that Roselawn Cemetery contains 40 acres and if all burial spaces were used, 37,120 burials could be made. Since Roselawn was established in 1920, there have been 9,000 burials throughout all 37,120 burial spaces, and that all the above cemeteries have a certain amount of acreage developed, ready for use and sale, and additional acreage for enlargement. He further testified: "I put Edgewood Cemetery in about 1922 and it has operated with only 10 acres since. It has additional acreage available. Oakland has additional acreage — we see burials there practically every day. Haven of Rest Cemetery has quite a lot of additional space available, but I don't know how much. I think there are sufficient grave spaces available to maintain the needs of the county. I don't know the exact number of acres available in all these cemeteries but there is available space in them for more development. Forest Hills Cemetery has over 100 acres. In three years I don't believe they have a thousand burials. In North Little Rock there is the Edgewood Cemetery and Mr. Kelley's cemetery up near Jacksonville."

Mr. Guy Kelley testified: "I own Chapel Hill Memorial Park Cemetery, about a mile and a half northeast of Jacksonville and about four and one-half miles from this proposed cemetery. We have developed at this time 20 acres, around 15,000 grave spaces already marked, ready

for use. We have a total, land owned and have leases and options on a total of 90,000 grave spaces. It can be marked off and graves dug on very short notice in the land I own and have a ten year lease on and option to buy.''

Mr. Haskill Wallis testified: ''I live at Route 5, North Little Rock, about 3 miles south of Jacksonville and have lived there about nine years. My home is on Lot I and adjoins the property where the proposed cemetery would go in. I certainly do not know of anything that has happened in the past year which has changed the situation with reference to the need for additional grave spaces or a graveyard or cemetery in that community.''

It thus appears that Roselawn Cemetery still has 28,120 available burial spaces. Edgewood Cemetery, which has operated with only 10 acres since 1922, still has additional space available; Forest Hills Cemetery has over 100 acres, 928 graves to the acre. It further appears that there are more than 160,000 burial spaces in this cemetery and the evidence shows that there have been approximately 1,000 burials since its opening. Haven of Rest Cemetery has considerable additional space for graves. Without taking into consideration available grave spaces in Oaklawn, Calvary and Pine Crest Memorial Park, there is a reasonable estimate of the total grave spaces available in Pulaski County from only three cemeteries (Roselawn, Forest Hills and Chapel Hills) amounting to 220,008 grave spaces available. Clearly, it seems to me, that the great preponderance of the testimony shows that there is presently no possible need for this proposed cemetery of appellant, Russell.

The majority lean heavily for support on the case of *McDaniel v. Forrest Park Cemetery Company,* 156 Ark. 571, 246 S. W. 874. We must bear in mind, however, that that opinion was delivered in January 1923, some thirty years before the passage of our cemetery acts, 250 of 1953 and 295 of 1957. In this case there was no mention of the need, one of the primary requisites of granting a cemetery permit under the above Acts. There the court

considered only the nuisance and sanitary features connected with the establishment of cemeteries, as indicated in the headnotes of that opinion as follows:

"1.   Nuisance — cemetery. — A cemetery is not a nuisance *per se*, and ordinarily courts of equity will not interfere but will leave the complainants to an action at law, unless it clearly appears that a nuisance will be brought into existence by the acts of the parties sought to be restrained.

"2.   Nuisance—cemetery.—When it appears that a place of sepulture is so situated that the burial of the dead there will endanger life or the water of wells or springs, the court will grant its injunctive relief, upon the ground that the remedy at law is inadequate.

"3.   Nuisance—cemetery. — Evidence held insufficient to enjoin the establishment of a cemetery."

Here, as pointed out, appellees rely solely on the ground that the preponderance of the evidence shows clearly that there was no *need* for this proposed cemetery and I think they are correct in this contention.

JUSTICE ROBINSON joining.