184

NORTH HILLS MEMORIAL GARDENS *v.* SIMPSON.

5-3227                                          381 S. W. 2d 462

Opinion delivered May 25, 1964.

[Rehearing denied September 14, 1964.]

*Russell & Hurley, Edwin E. Dunaway,* for appellant.

*Glenn F. Walther,* for appellee.

GEORGE ROSE SMITH, J. This is the second application by the principal appellee, Rest Hills Memorial Park, Inc., for authority under the Cemetery Act to establish a new cemetery between North Little Rock and Jacksonville. Ark. Stat. Ann. §§ 82-411 *et seq.* (Repl. 1960). Both applications have been resisted by the appellant, which owns another cemetery, North Hills Memorial Gardens, situated about two miles from the site of the appellee's proposed cemetery.

Rest Hills' first application was denied by the Cemetery Board on March 26, 1962. The board's order is not in the present record, but apparently the application was rejected on the sole ground that sufficient grave spaces were available in other cemeteries to meet the public

need. Rest Hills took an appeal to the Pulaski Chancery Court, but the corporation elected to dismiss its appeal before the matter was heard by the court.

The present application was filed by Rest Hills in October of 1962. After an extended hearing the board changed its position and filed an opinion on March 29, 1963, granting the permit. North Hills appealed to the chancery court, where the board's decision was affirmed. This appeal followed.

At the outset the appellees, Rest Hills and three members of the Cemetery Board, attack the constitutionality of that section of the Cemetery Act that provides for an appeal to the chancery court. § 82-414. Counsel rely upon the settled rule that the legislature cannot enlarge or diminish the jurisdiction of equity as it existed when the Constitution of 1874 was adopted. *German Nat. Bk.* v. *Moore,* 116 Ark. 490, 173 S. W. 401.

We do not reach the merits of this contention. A constitutional question cannot be raised for the first time on appeal. *Latham* v. *Hudson,* 226 Ark. 673, 292 S. W. 2d 252. Even if the provision for a review in chancery is invalid it does not follow that there would be a complete absence of jurisdiction, as would be the case if the chancellor attempted to hear a criminal case. In this situation the appellees' jurisdictional objection cannot be interposed for the first time in this court. They waived the point by failing to seek a transfer of the cause to the circuit court. *Green* v. *Garrett,* 225 Ark. 311, 280 S. W. 2d 905.

It is first contended by the appellant that the board's original denial of Rest Hills' application for a permit is *res judicata.* It is true that when an administrative board acts judicially or quasi judicially its decision may be *res judicata* in a second proceeding involving the same question. *Bockman* v. *Ark. State Medical Board,* 229 Ark. 143, 313 S. W. 2d 826. We are not convinced, however, that all the technical rules that make up the common-law doctrine of *res judicata* should apply with equal force to administrative proceedings.

For example, if the plaintiff in a lawsuit loses his case on the merits because of his inadvertent failure to prove some fact essential to his cause of action he is not allowed to file a second suit and try the issues again. There is no good reason for applying this rule in an administrative matter such as this one. Counsel for the appellees point out that Rest Hills may have elected to dismiss its first chancery appeal and start over again for the reason that it did not then have title to the site of its proposed cemetery—a defect that might have been fatal. It would hardly be reasonable to deny a second application for an administrative permit merely because of some technical flaw in the first application.

Again, a decision at common law is conclusive not only of those matters that were actually litigated but also of those questions that were within the issues and might have been explored. This rule ought not to apply to the decision of a law body such as the Cemetery Board. Rest Hills' original application was denied on one ground only. At the second hearing the board considered additional matters, including the accessibility of the Rest Hills site, its beauty as compared to that of North Hills, and the various facilities that Rest Hills mean to provide. A chapel, a mausoleum, and a crematory were included in the applicant's long-range plans. An important consideration is "the need or desirability from the public standpoint of the proposed cemetery." § 82-419. If there is really a need for the proposed cemetery, as the board found, then the public interest should not be thwarted merely because Rest Hills did not present all its available evidence at the first hearing. The plea of *res judicata* was correctly rejected.

A second contention is that the board erred in finding that there was a public need for the Rest Hills cemetery. On this issue the testimony is in sharp conflict. Harry Leggett and Harold Brown, both of whom had extensive experience in this general field, gave their reasons for believing that the cemetery was needed. The appellant produced much evidence to the contrary. If

the case were being tried *de novo* we might be inclined to think the board's decision to be against the weight of the evidence. But that is not the standard of review. The question is whether the board's decision was arbitrary. *North Hills Memorial Gardens* v. *Hicks,* 230 Ark. 787, 326 S. W. 2d 797. In view of the persuasive proof proffered by both sides we are unable to say that the board's findings are not sufficiently supported.

In the chancery court the appellant made for the first time the interesting point that the Cemetery Board was not legally constituted. The original statute, Act 250 of 1953, created a three-member board. Ark. Stat. Ann. § 82-414 (Repl. 1960). In 1961, by Act 74, the legislature increased the membership to five (§ 82-414 [Supp. 1963]), but for some reason the two additional members had not been appointed when this application was heard by the board in the early part of 1963. The appellant insists that the proceedings before a board of only three members were void.

We are of the opinion that the board's action had at least practical validity. When there is a *de jure* office, as there was here, sound policy requires that the acts of a *de facto* incumbent be given effect. See *Pope* v. *Pope,* 213 Ark. 321, 210 S. W. 2d 319. Act 74 of 1961, *supra,* specifically provided that three members of the Cemetery Board should constitute a quorum and that orders should be made by majority action of the five members. All three members acted in this case. They were unanimous. Thus they exercised the same authority that they would have had if the other two members had already been appointed but had not been present at the hearings. In the absence of any timely objection to the composition of the board the appellant cannot be permitted to challenge the validity of the proceedings only after the decision has proved to be unfavorable to it.

The appellant argues several other grounds for reversal, some being that a member of the board was absent for four or five minutes during one of the hearings, that all the officers of Rest Hills were not excluded from

the courtroom during the trial in chancery, that the board should have required Rest Hills to contribute to its perpetual care fund more than the statutory minimum of 10% (§ 82-422), and that there are other prejudicial errors in the record. We have reviewed these arguments and find them to be without merit.

Affirmed.

JOHNSON, J. dissents.

JIM JOHNSON, Associate Justice (dissenting). I do not agree with the majority view. The entire record before us strongly indicates pungent tinges of an expedient opinion by the Arkansas State Cemetery Board, a ruling which on appeal can only be disturbed by a finding that the board acted arbitrarily. *Newton* v. *American Sec. Co.*, 201 Ark. 943, 148 S. W. 2d 311. In fact that majority concedes that "if the case were being tried de novo we might be inclined to think the board's decision to be against the weight of the evidence." The board's decision is not only against the weight of the evidence it is against virtually all of the evidence. On March 26, 1962, after a full and complete hearing on all issues this board judiciously denied appellee's application for a cemetery permit. A few short months later this same board based upon practically the identical testimony did a complete flip flop and granted appellee's permit. The record is silent as a tomb as to why. It is true as pointed out by this court in *North Hill Memorial Gardens* v. *Hicks*, 230 Ark. 787, 326 S. W. 2d 797, "there is nothing in Act 250 of 1953 calculated to create a monopoly in favor of existing cemeteries," still, in that case, we were careful to determine that Act 250 is a *banking* measure regulating the creation, maintenance and operation of perpetual care cemeteries, investing certain descretionary powers in the board not for the creation of monopolies but to insure the exercise of sound financial practices.

The legislature in its wisdom obviously recognized a need to protect the investiments of hundreds of thousands of the unsuspecting public when it enacted Act 250 of 1953. The law requires such cemeteries to set aside a percentage of the sales price of these lots in a perpetual

care fund, from which must be met the cost of maintaining these cemeteries eternally. The spirit of the act is to guarantee that persons who invest in lots for their loved ones in perpetual care cemeteries will receive what they pay so dearly for. Yet the record here shows beyond question that not a perpetual care cemetery in the Pulaski County area could fulfill this contractual obligation for perpetual care if their present sales were diminished. Even now some of these cemeteries appear to be teetering on the brink of bankruptcy. At this point there is not a perpetual care cemetery in the Pulaski County area which could be maintained by their perpetual care fund. Far from it. The record is as follows:

Pine Crest Memorial Park, Inc., is a garden type cemetery located ten miles west of Little Rock, approximately two miles from the Saline County line on the old Hot Springs highway. It consists of 229 acres, out of which 150 acres have been dedicated. 150,000 burial spaces have been sold from such 150 acres, and 206,000 more are available for sale from such acreage. Only 6,000 persons are buried in this cemetery, and its present rate of funerals is 300 per year. It maintains a perpetual care fund derived from 10% of the sale price of burial plots. At present the fund has a balance of $119,000.00, which earns from approxed investments about $4,000.00 annually. The cost of maintenance of the cemetery is $60,000.00 each year; therefore 1,000 spaces must be sold at an average of $100.00 each during the period of a year for the enterprise to operate successfully.

North Hills Memorial Gardens, a new cemetery, is situated midway between Little Rock and Jacksonville. It contains 200 acres, which will be utilized in both garden type and monument sections. At the present it has sold 1,000 burial spaces and is offering 179,000 additional spaces for sale. It must sell 500 to 600 spaces per year in order to meet its maintenance cost, which is presently $15,000.00. Forty-five persons are buried there.

Forest Hills Memorial Park is established on State Highway 5 at the Pulaski-Saline County line. In com-

prises 140 acres which if developed in entirety would require an expenditure of $35,000.00 per year for maintenance. Additional burial spaces in the amount of 40,000 should be sold in order to provide an annual income of $35,000.00.

Chapel Hill cemetery, containing 40 acres, is situated near Jacksonville. It has available for sale 19,000 spaces provided through the development of 20 acres and a like number of space can be secured by the development of the remaining 20 acres. Sales totaling $40,000.00 annually are necessary to meet the maintenance cost of $8,000.00.

Now against this overwhelming evidence appellant offered the testimony of its star witness, Mr. Harold Brown. Mr. Brown testified as an expert. He was qualified as follows:

"I live in Topeka, Kansas. I am a cemetery consultant, for approximately 11 years. You do not learn this in schools, but through experience. I was in the business 3 years prior to becoming a consultant. I act as a consultant on basic management problems relative to the business sales development. I consult with people before they go into the cemetery business. I do consultant work in several states, principally sales operation. I am consulted on almost every phase of the business. People consult me on all phases of the operation of the cemeteries. I am a member of the National Association of Cemeteries. These associations operate some schools for sales and administration. I have been an instructor in both associations. I have written a number of articles that have been published in the American Cemetery Magazine as well as a book called "How to Sell Cemetery Property Before Need.'"

On cross-examination Mr. Brown candidly admitted that he had worked for perpetual care cemeteries in the Pulaski County area and found the selling of cemetery lots as hard as he had ever encountered, that he gave it up because he didn't find it profitable.

Not one disinterested witness testified as to need for this additional cemetery.

The state of the record being thus, I am impelled to the conclusion that the State Cemetery Board when it granted appellee a permit acted arbitrarily and with reckless abandon flooded the already glutted marked with approximately 45,000 new cemetery lots, to be pushed by the accompanying avalanche of salesmen. By so doing the Board severely jeopardized the investments of all the people in the Pulaski County area who have heretofore invested in perpetual care cemetery lots. By the enactment of Act 250 the legislature in no uncertain terms admonished the Cemetery Board that "the need to be considered is a need from a public standpoint." Clearly the board failed in its responsibility.

For the reasons stated, I respectfully dissent.