RICHARD MITCHELL, D/B/A MITCHELL
FUNERAL HOME *v.* GEORGE BEARDEN,
SHIRLEY BEARDEN ET AL

73-177                           503 S.W. 2d 904

Opinion delivered January 21, 1974

*L. V. Rhine, Douglas Bradley,* and *Jon R. Coleman,*
for appellant.

*C. Joseph Calvin,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellant asserts that the
chancery court erred in enjoining him from constructing
a funeral home in Rector on a lot acquired by him for
that purpose. The error, according to appellant, is in the
court's finding that the vicinity in which the funeral
home was to be located was an expanding exclusive resi-
dential area which was not in transition to business uses,
so that the funeral home would constitute a nuisance. We
affirm because we cannot say this finding was clearly
against the preponderance of the evidence.

The importance of this finding is delineated in such
cases as *Fentress* v. *Sicard,* 181 Ark. 173, 25 S.W. 2d 18;

*Powell* v. *Taylor*, 222 Ark. 896, 263 S.W. 2d 906; *Howard* v. *Etchieson*, 228 Ark. 809, 310 S.W. 2d 473; and *Blair* v. *Yancey*, 229 Ark. 745, 318 S.W. 2d 589. Through these cases, we have established these general principles, with regard to preventing establishment of ·funeral homes: A funeral home is not a nuisance per se. The intrusion of a funeral home into an exclusively residential district would ordinarily constitute a nuisance. It may be a nuisance in an area essentially residential in character. If, however, transition of the district from residential to business has so far progressed that the value of surrounding property would be enhanced as business property, rather than depreciated as residential property, the establishment of a funeral home would not constitute a nuisance.

Decisions recognizing the right of property owners to prevent the intrusion of a funeral home into a residential district are based upon the premise that the continuous suggestion of death and dead bodies tends to destroy the comfort and repose sought by home owners. See *Powell* v. *Taylor*, supra. The critical factor in determining the application of the general principles appears to be the effect on property values because of the location of the funeral home. Considerable weight is also given to the predominance of either commercial or residential property in the area. We cannot agree with appellant's analysis of our holdings, insofar as he interprets them to turn upon the manner of operation of a funeral home. While this could become a factor in determining whether injunctive relief should be granted, it is not determinative, and injunctive relief has been approved without any indication that the manner of operation would be in anywise contrary to prescribed standards and regulations.

The lot in question here is 170' x 180' and lies on the west side of Woodland Heights Drive (formerly Old Cemetery Road) in Rector, between two residences. All of the block on the west side of this drive between Second Street and Woodland Heights Cemetery, except for appellant's lot, is occupied by residences. All these dwelling houses were constructed after the cemetery was established. There are four homes between appellant's lot and the cemetery, the entrance of which is approximately

600 feet south of his lot. None of the property east of the street on which appellant's lot faces is developed. It is presently being used as a cow pasture. All the land in the block in which the Mitchell lot is located lying west of that lot and the homes on each side of it is presently used for pasture. There are also residences, however, facing Second Street and lying west of the residence at the corner of Second and Woodland Heights Drive. There had been a "camper" parked northwest of this intersection on the corner lot and a mobile trailer home on the lot just north of that.[1] There is also a machine shop on the north of this block near its western boundary on Idlewild Street. It was built 20 to 30 years ago—long before most of the residences in the area. In the next block to the north there was a dwelling house in which there was a beauty shop and another in which there is an antique shop occupying part of the garage and carport. Both faced Woodland Heights Drive, and there is evidence indicating the operators of these shops live in the dwellings in which they are located. There was testimony that the antique shop was located in a very attractive house. There is no evidence that there is any zoning ordinance in Rector or that there are any building restrictions that would prohibit the building of a funeral home anywhere in Rector.

There was testimony by a licensed real estate broker, who had been in construction work and who claimed to know property values in Rector, that several residences in the area would suffer depreciation in value by reason of the construction of the proposed funeral home. He opined that both Woodland Heights Drive and Second Street were strictly residential, even though there were some shops in the area. According to him, traffic and parking problems would be presented. He said no new businesses were being constructed in the area, but new residences were being built over a two-block area.

Another licensed real estate agent pointed out specific residential properties in the area that would suffer depreciation in value by reason of intrusion of a funeral home at the proposed location. He testified that the "cow

---

[1] There was testimony indicating that the trailer was not visible from Woodland Heights and that the camper had been removed prior to trial.

pasture" across the street, being suitable for residential purposes, would also suffer depreciation in value. He emphasized the effect of traffic and parking problems resulting from the operation of a funeral home. It was shown by other testimony that Woodland Heights Drive is a major thoroughfare for traffic entering and leaving Rector and carries more traffic than most Rector streets. It is 18 feet wide, with a six-foot dirt shoulder on one side and a three-foot one on the other. Outside the shoulders there are ditches. The Chief of Police testified that traffic congestion resulted when a funeral was in progress. While one car could pass between two others parked on this street, two could not meet and pass.

An appraiser for a savings and loan association, who agreed with other witnesses that the erection of the proposed funeral home would depress values in the area, emphasized loss of the homeowners' privacy. He found no adverse effect attributable to the antique and beauty shops. He also thought the property east of Woodland Heights Drive was suitable for residential development. The owner of one of the "cow pastures" testified he and his two sisters planned to sub-divide it for residential uses and had already platted part of it.

Neighboring dwellers stressed the morbid and depressing effect of a funeral home, restraints on recreational activities of families and the potential traffic congestion. Values of their property ranged from $14,500 to $28,000. There was testimony that bodies would be brought into the funeral home for embalming at all hours of the day and night. Appellant admitted that he would operate an ambulance service which would be used in response to emergency calls at all hours. Deliveries of flowers, caskets and vaults would be made to the establishment.

None of this evidence was substantially contradicted. Appellant pointed out that he planned a parking lot with capacity for 30 cars, without crowding, which he said was adequate for visitation hours and for most funerals. He anticipated that, by crowding, the lot would accommodate 45 cars, and that this would be sufficient parking for almost any funeral in Rector.

One of the arguments advanced by appellant is that the development of the area has been deterred already by reason of the cemetery. There was considerable testimony, however, that the cemetery was not visible from the property involved by reason of the fact that it lay beyond a slight knoll or rise in ground elevation. It was conceded by some of the witnesses that property in the area would be more valuable if the cemetery were not so close. One of the expert witnesses, however, testified that the residential lots in the area would not be diminished in value because of the cemetery.

The mere fact that property values in the area may have already been depressed by proximity to the cemetery does not diminish the weight of the testimony of the various witnesses about the impact of the establishment of the funeral home in that area. Neither does it tend to show that there is any transition toward commercial development, since all the residences have been built since its opening. We do not agree with appellant that there is any testimony that the cemetery has impeded the development of the lands now used for pasture, even though such an inference might possibly be drawn.

On this record, we are unable to say the chancellor's finding was clearly against the preponderance of the evidence. Accordingly, the decree is affirmed.

HARRIS, C.J., not participating.