MILLER-ELSTON MORTUARY, Inc. and MAGNOLIA
LODGE NO. 60, Free and Accepted
Masons of Arkansas *v.* Dr. Nicholas PAAL,
Sam ENGLISH, Marilyn GLASGOW, Bill NORRIS
and James CHUDLEIGH

76-373                                         550 S.W. 2d 771

Opinion delivered May 23, 1977

*Pope, Pratt, Shamburger, Buffalo & Ross,* by: *Robert D. Ross,* for appellant Miller-Elston Mortuary, Inc.

*Philip W. Ragsdale,* for appellant Magnolia Lodge No. 60, Free and Accepted Masons of Arkansas.

*Solloway & Cronkhite,* by: *Lanny K. Solloway,* for appellees.

GEORGE ROSE SMITH, Justice. The appellant, a corporation owned by Joseph Elston, owns and operates a funeral home in Little Rock. Elston testified that the inadequacy of his facilities led to a decline in his volume of business. He decided to acquire a larger building and, being black himself, sought such a building in a predominantly black neighborhood. This resulted in his entering into a contract to purchase the vacant Magnolia Lodge Building at the corner of Sixteenth and Battery Streets. The contract was conditioned upon Elston's being successful in having the property rezoned and in obtaining a building permit for the necessary remodeling of the building.

The city directors approved the rezoning of the property from a residential classification to a Lodging, Nursing Home, and Undertaking classification. This suit, however, was brought by four owners or lessees of residential property in the neighborhood, asserting that the funeral home would constitute a nuisance in the surrounding residential district and should be enjoined. Another protestant intervened in the case. After an extended hearing the chancellor entered a decree permanently enjoining the appellant from operating the proposed funeral home.

The applicable principles of law are settled by our cases. A funeral home is not a nuisance per se. It may be a nuisance, however, in a residential district as a result of its continuous reminder of death and dead bodies, which may destroy the comfort and repose sought by homeowners and lead to a decline in property values. *Mitchell Funeral Home* v. *Bearden,* 255 Ark. 888, 503 S.W. 2d 904 (1974); *Powell* v. *Taylor,* 222 Ark. 896, 263 S.W. 2d 906 (1954).

In the present case there was comparatively light opposi-

tion to Elston's proposal. Even though the district is entirely residential for at least two blocks in every direction from the site of the Lodge Building, a number of witnesses testified in Elston's favor. In fact, the chancellor's decree is somewhat unusual in that upon almost every point he found that the protestants had not proved their assertions by a preponderance of the evidence. Specifically, the chancellor found that no serious traffic problems would be created, that it had not been shown that the neighborhood would gradually become commercial if the Lodge Building were converted to a funeral home, that it had not been shown that there would be a genuine detrimental effect upon property values, and that the witnesses who testified about the presence of the funeral home as a reminder of death were comparatively young. Actually, only two witnesses touched upon that issue, and the one who would be very near the funeral home purchased his property after the rezoning and with knowledge of it. Our review of the record convinces us that the chancellor's evaluation of the conflicting proof was an accurate summation.

Despite his misgivings, the chancellor concluded that "the testimony of the witness, Hill, . . . convinces the Court the injunction must be and it is made permanent." We must, therefore, examine Hill's testimony in some detail.

Hill is (or was at the time of the trial) the City Director of Human Resources. In that capacity he is responsible for planning and implementing programs to upgrade several neighborhoods that have deteriorated. To that end he participates in allocating and administering federal funds in an effort to save and revitalize residential areas. During a period of seven years about $20,000,000 was so spent in neighborhoods throughout the city.

Although the neighborhood now in question is predominantly black, Hill testified that young professional whites were beginning to move back into it. Hill personally believed that a racial mixture is good for any neighborhood and that anything causing a reversal of that process would be detrimental to the neighborhood. He pointed out that most of the protestants were white and expressed the opinion that if a

black funeral home were established in the neighborhood it might cause the moving in of whites at least to slow up and their moving out to start up again.

It is unnecessary for us to weigh the merits or demerits of Hill's position, for even if his point of view were found to be wholly correct it is still not a controlling consideration in a judicial proceeding such as this suit. Hill's testimony might more appropriately have been presented to the city authorities when the application for rezoning was submitted for their consideration. In the courts the issue is whether the proposed funeral home will have such an effect upon the surrounding residential property as to constitute a nuisance. The long-range and intangible sociological consequences of the establishment of the funeral home are not, in our opinion, matters that can be given weight in a case of this kind. Consequently we cannot agree with the chancellor's conclusion that Hill's testimony has the effect of overcoming the deficiencies that otherwise exist in the protestants' proof.

The Magnolia Lodge, as the seller of the property, intervened in the case and sought specific performance of its contract. To this point its prayer for relief has been premature, because the completion of the sale has been contingent upon the appellant's successful defense of this case. That issue having now been settled, the cause will be remanded for further proceedings.

Reversed.

We agree. HARRIS, C.J., and HOLT and ROY, JJ.